**Jerome D. NUNN, petitioner, Appellant,**

v.

**STATE of Minnesota, Respondent.**

No. A07–2235.

Supreme Court of Minnesota.

July 24, 2008.

Jerome Deon Nunn, Bayport, MN, Appellant.

Attorney General–Criminal, St. Paul, MN, Linda K. Jenny, Minneapolis, MN, for Respondent.

## OPINION

GILDEA, Justice.

This case comes to us on appeal from the postconviction court's denial of appellant Jerome D. Nunn's petition for postconviction relief. In 1996, Nunn was convicted of the first-degree murder of Abdul Poe and the attempted first-degree mur-

der of John Holmes. We affirmed Nunn's convictions on direct appeal. *State v. Nunn,* 561 N.W.2d 902, 909 (Minn.1997). Ten years later, Nunn petitioned for postconviction relief on the grounds that the prosecutor committed misconduct during closing argument and that Nunn's appellate counsel was ineffective in failing to raise the prosecutorial misconduct issue on direct appeal. The postconviction court denied Nunn's petition without holding an evidentiary hearing. We affirm.

Abdul Poe and John Holmes were shot on July 22, 1995, while sitting in a car in the parking lot of a Minneapolis liquor store; Poe died from the gunshot wounds he suffered.[1] A Hennepin County grand jury indicted Nunn for the first-degree murder of Poe, Minn.Stat. § 609.185(1) (1994), and the attempted first-degree murder of Holmes, Minn.Stat. §§ 609.17, 609.185(1) (2006). The jury found Nunn guilty of both counts, and the district court subsequently entered convictions and sentenced Nunn to consecutive terms of life and 180 months imprisonment. On direct appeal, Nunn argued that the district court committed reversible error by admitting "other crimes" evidence and prior consistent out-of-court statements of prosecution witnesses. *Nunn,* 561 N.W.2d at 906. We held that the district court did not abuse its discretion in admitting this evidence and affirmed Nunn's convictions. *Id.* at 909.

In 2007, Nunn petitioned for postconviction relief, claiming that the prosecutor committed misconduct during the State's closing argument by appealing to the passions of the jury, aligning himself with the jury, and implying knowledge of outside evidence of Nunn's guilt. Nunn also

1. A detailed account of the underlying facts of this crime and the evidence presented at Nunn's trial is set forth in our opinion deciding Nunn's direct appeal. *Nunn,* 561 N.W.2d at 904–06. In this opinion, we refer only to those facts that are relevant to our resolution of the issues currently before us.

claims that he received ineffective assistance of appellate counsel because his attorney did not raise the prosecutorial misconduct issue on direct appeal. The postconviction court concluded that the "petition, files, and records conclusively demonstrate that [Nunn] is not entitled to relief" and therefore denied Nunn's petition without holding an evidentiary hearing.

 When direct appellate relief is not available, a person convicted of a crime may petition the district court for postconviction relief. Minn.Stat. § 590.01, subd. 1 (2006). The postconviction court must hold an evidentiary hearing "[u]nless the petition and the files and records of the proceeding conclusively show that the petitioner is entitled to no relief." Minn.Stat. § 590.04, subd. 1 (2006). On appeal, we review the postconviction court's factual findings to determine whether they are supported by sufficient evidence, and will reverse only if the court abused its discretion. *Leake v. State,* 737 N.W.2d 531, 535 (Minn.2007); *Schneider v. State,* 725 N.W.2d 516, 520 (Minn.2007). But the postconviction court's legal determinations, "including legal determinations of ineffective assistance of counsel, * * * are reviewed de novo." *Schneider,* 725 N.W.2d at 520; *accord Cooper v. State,* 745 N.W.2d 188, 190 (Minn.2008).

I.

 Before we reach the merits of Nunn's claims, we must determine whether those claims were properly raised in this petition for postconviction relief. All claims raised on a direct appeal, and all claims that were known or should have been known at the time of a direct appeal, are barred from consideration upon a subsequent petition for postconviction relief. *State v. Knaffla,* 309 Minn. 246, 252, 243 N.W.2d 737, 741 (1976); *see also* Minn.

Stat. § 590.01, subd. 1 ("A petition for postconviction relief after a direct appeal has been completed may not be based on grounds that could have been raised on direct appeal of the conviction or sentence."). But this rule does not apply to claims presenting a novel legal issue or where the interests of justice require review (i.e., "if fairness requires review and the petitioner did not deliberately and inexcusably fail to raise the issue on direct appeal"). *Schneider,* 725 N.W.2d at 520; *accord Cooper,* 745 N.W.2d at 191.

The State argues that Nunn's claim that the prosecutor committed misconduct during the State's closing argument is procedurally barred under *Knaffla.* In *Cooper,* we said that claims relating to closing argument generally "are known or should have been known at the time of a direct appeal." 745 N.W.2d at 191 (citing *Pippitt v. State,* 737 N.W.2d 221, 229 (Minn.2007), and *Severson v. State,* 636 N.W.2d 808, 810 (Minn.2001)). The record in this case confirms that Nunn's prosecutorial misconduct claim was known or should have been known at the time of his direct appeal— the State's entire closing argument, including the statements Nunn now argues were improper, appears in the trial transcript, and Nunn's trial counsel objected to two of the allegedly improper statements. Moreover, Nunn's prosecutorial misconduct claim does not involve novel legal issues, and there is no indication that the interests of justice require review. Because the issue could have been raised on direct appeal, we hold that Nunn's prosecutorial misconduct claim is procedurally barred from consideration in the present postconviction proceedings.

 The State also argues that Nunn's second claim—ineffective assistance of appellate counsel—is procedurally barred under *Knaffla.* But we have repeatedly held that "[c]laims of ineffective assistance of

appellate counsel on direct appeal are not barred by the *Knaffla* rule in a first postconviction appeal because they could not have been brought at any earlier time." *Leake,* 737 N.W.2d at 536; *accord Schneider,* 725 N.W.2d at 521; *Townsend v. State,* 723 N.W.2d 14, 19 (Minn.2006). Because this is Nunn's first petition for postconviction relief, we conclude that his ineffective assistance of appellate counsel claim is properly before us.

## II.

■ Nunn claims that his attorney on direct appeal was ineffective in failing to raise the issue of prosecutorial misconduct. In order to succeed on an ineffective assistance of counsel claim, a petitioner must prove two elements: (1) " 'counsel's representation fell below an objective standard of reasonableness,' " and (2) " 'there is a reasonable probability that, but for counsel's unprofessional errors, the results of the proceeding would have been different.' " *Fields v. State,* 733 N.W.2d 465, 468 (Minn.2007) (quoting *Strickland v. Washington,* 466 U.S. 668, 687–88, 694, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984)). We have recognized that "appellate counsel [does] not have a duty to include all possible claims on direct appeal, but rather [is] permitted to argue only the most meritorious claims." *Schneider,* 725 N.W.2d at 523. Thus, the representation by Nunn's attorney on direct appeal did not fall below an objective standard of reasonableness if he "could have legitimately concluded that he would not have prevailed" on the prosecutorial misconduct issue. *Id.; accord Cooper,* 745 N.W.2d at 193; *Leake,* 737 N.W.2d at 536. Moreover, under the second prong of the ineffective assistance of counsel test, Nunn must show to " 'a reasonable probability' " that the outcome of his direct appeal would have been different if the prosecutorial misconduct issue had been raised. *See Fields,* 733 N.W.2d at

468 (quoting *Strickland,* 466 U.S. at 694, 104 S.Ct. 2052); *Schneider,* 725 N.W.2d at 521. We therefore begin our analysis of Nunn's ineffective assistance of appellate counsel claim by considering the merits of his prosecutorial misconduct claim.

■ Prosecutorial misconduct "results from violations of clear or established standards of conduct, e.g., rules, laws, orders by a district court, or clear commands in this state's case law." *State v. Fields,* 730 N.W.2d 777, 782 (Minn.2007). When assessing alleged misconduct during a closing argument, "we look to the closing argument as a whole, rather than to selected phrases and remarks." *Ture v. State,* 681 N.W.2d 9, 19 (Minn.2004). The determination of the propriety of a prosecutor's closing argument is generally " 'within the sound discretion of the trial court.' " *State v. Ray,* 659 N.W.2d 736, 746 (Minn.2003) (quoting *State v. Parker,* 353 N.W.2d 122, 127 (Minn.1984)).

Nunn argues that the prosecutor committed three separate types of misconduct during the State's closing argument: (1) appealing to the passions of the jury, (2) aligning himself with the jury, and (3) implying knowledge of outside evidence of Nunn's guilt. We address each of these claims in turn.

## A.

■ Nunn first claims that the prosecutor improperly appealed to the passions of the jury by stating, "John Holmes and Abdul Poe are victims of a brutal crime. Their lives deserve the protection of the law." According to Nunn, this statement was intended to appeal to the jury's sympathy for the victims and "strongly suggested to the jury that they had an obligation to seek justice for the victims."

■ A prosecutor is not permitted to "appeal to the passions of the jury"

during closing argument. *State v. Mayhorn*, 720 N.W.2d 776, 786–87 (Minn.2006); *accord State v. Salitros*, 499 N.W.2d 815, 817 (Minn.1993) (" 'The prosecutor should not use arguments calculated to inflame the passions or prejudices of the jury.' " (quoting I ABA Standards for Criminal Justice, The Prosecution Function 3–5.8(c) (2d ed.1979))). A prosecutor should also avoid arguments that " 'divert the jury from its duty to decide the case on the evidence, by injecting issues broader than the guilt or innocence of the accused under the controlling law, or by making predictions of the consequences of the jury's verdict.' " *Salitros*, 499 N.W.2d at 817 (quoting I ABA Standards for Criminal Justice, The Prosecution Function 3–5.8(d) (2d ed.1979)). But these restrictions do not preclude all arguments relating to the impact of the crime on the victim. For example, "[i]t is proper for a prosecutor to talk about what the victim suffers and to talk about accountability, in order to help persuade the jury not to return a verdict based on sympathy for the defendant." *State v. Montjoy*, 366 N.W.2d 103, 109 (Minn.1985).

In this case, the postconviction court found that the prosecutor's statement was not improper because it "was not intended to arouse the passions of the jury or distract jurors from their burden of proof," but was instead made "in the context of refuting the insinuation that the victims were undeserving of protection." This finding is supported by the record. First, the challenged statement was immediately preceded by the following statement: "Remember also the defense's attempt to make the victims in this case look like there's something wrong with them or they are bad people." Moreover, in overruling Nunn's objection, the trial court necessarily concluded that the challenged statement was proper, and this conclusion is entitled to deference. *See Ray*, 659

N.W.2d at 746 (indicating that the propriety of a prosecutor's closing argument is generally " 'within the sound discretion of the trial court' " (quoting *Parker*, 353 N.W.2d at 127)). Finally, the challenged statement was isolated, constituting only 3 lines of a 37–page closing argument. In the context of the entire closing argument, it is unlikely that this statement was sufficient to divert the jury from its role of deciding whether the State proved Nunn's guilt beyond a reasonable doubt. We therefore conclude that the prosecutor did not commit misconduct by appealing to the passions of the jury.

### B.

█ Nunn argues that the prosecutor improperly aligned himself with the jury by repeatedly using the pronoun "we" when describing the evidence presented at trial. In particular, Nunn challenges the following portion of the State's closing argument:

> We learned in this case that he possesses and carries guns. We learned that he threatened to hurt people if it involves his money or his drugs. We learned that he was trying to intimidate his own cousin because it involved his money and his drugs. We learned that he rode in Minneapolis with guns in the car.
>
> And we also learned that if he was wronged, if he felt wronged about what was important to him, the money and the drugs, that he would kill for it. That's what we learned during the course of this trial. That was important to him—the drugs and that money—and he would kill for it.

According to Nunn, the prosecutor's use of "we" in this manner "created a situation of 'us' (the prosecutor and the jury) against 'him' ( [Nunn] )."

In arguing that the use of "we" improperly aligned the prosecutor with the jury, Nunn relies on our decision in *Mayhorn*, 720 N.W.2d 776. In that case, the defendant challenged the following statement by the prosecutor: "This is kind of foreign for all of us, I believe, because we're not really accustomed to this drug world and drug dealing." *Id.* at 789. Although we had previously allowed a prosecutor to describe a defendant as being from a different world than the jurors when the comments merely provide context for unfamiliar aspects of the drug culture, we held in *Mayhorn* that "it does not follow that a prosecutor may describe herself and the jury as a group of which the defendant is not a part." *Id.* at 789–90. We also expressly noted that "a prosecutor is not a member of the jury, so to use 'we' and 'us' is inappropriate and may be an effort to appeal to the jury's passions." *Id.* at 790.

Nunn's reliance on *Mayhorn* fails for two reasons. First, although we indicated that a prosecutor's use of "we" and "us" during closing argument was inappropriate, we did not decide *Mayhorn* until 2006—10 years after the trial in this case. Thus, the prosecutor's use of "we" during Nunn's trial could not have violated any standard of conduct we established in *Mayhorn*.

Second, the challenged statements in this case involve the prosecutor's use of "we" in describing the evidence that had been presented at trial (i.e., "we learned" various facts from the trial testimony). Although this use of "we" may align the prosecutor with the jurors, it does not necessarily exclude the defendant because the "we" could reasonably be interpreted in this context to refer to everybody who was in court when the evidence was presented. The prosecutor's use of "we" in this case is thus significantly different from the description of the foreign drug

world, of which the defendant was a part and the prosecutor was not, that we addressed in *Mayhorn*, 720 N.W.2d at 789. We therefore conclude that in this particular case, the prosecutor's use of "we" when describing the evidence presented at trial was not misconduct.

## C.

 Finally, Nunn claims that the following statement constitutes prosecutorial misconduct: "Two people were involved in the shooting. We may never know who the other one was. We know who one of them was. It was this defendant." Nunn argues that prosecutor's use of the words " '*We know* ' strongly suggests to the jury that the prosecutor, his office and law enforcement have outside proof and/or knowledge that [Nunn] committed the crime without any doubt," and that "this impermissible tactic diverted the jury from its duty to decide the case on the evidence."

In *State v. Roman Nose*, we considered whether a prosecutor committed misconduct in a closing argument by repeatedly using the phrase "we know" in making inferences from DNA evidence. 667 N.W.2d 386, 401 (Minn.2003). Because a prosecutor "may present to the jury all legitimate arguments on the evidence, analyze and explain the evidence, and present all proper inferences to be drawn from the evidence," we held that the prosecutor's statements were not improper. *Id.* at 402.

In this case, the trial court concluded that the prosecutor's statement was not improper by overruling Nunn's objection, and this conclusion is entitled to deference. *See Ray*, 659 N.W.2d at 746. Looking at the record in this case, the challenged statement followed a lengthy description of the evidence supporting the State's theory of the case. Moreover, immediately after the trial court overruled Nunn's objection,

the prosecutor again highlighted the key evidence linking Nunn to the shooting. As in *Roman Nose*, the context of the challenged statement in this case thus suggests that the prosecutor was permissibly drawing inferences from the evidence presented at trial, not implying the existence of other evidence of Nunn's guilt. Finally, given the limited nature of the challenged statement in the context of the prosecutor's lengthy closing argument, it is unlikely that this statement was sufficient to divert the jury from deciding Nunn's guilt or innocence based on the evidence presented at trial. We therefore conclude that the prosecutor did not commit misconduct by implying the existence of outside evidence of Nunn's guilt.

Because it is thus unlikely that any of Nunn's allegations of prosecutorial misconduct would have succeeded on the merits, we conclude that Nunn failed to establish that he received ineffective assistance of counsel on his direct appeal. Accordingly, we hold that the postconviction court did not err in denying Nunn's petition for postconviction relief.

Affirmed.