**Eric Maurice WRIGHT, petitioner, Appellant,**

v.

**STATE of Minnesota, Respondent.**

**No. A08–1666.**

Supreme Court of Minnesota.

May 14, 2009.

Rehearing Denied July 28, 2009.

---

Eric Maurice Wright, Stillwater, MN, pro se.

Lori Swanson, Attorney General, St. Paul, MN, Janelle P. Kendall, Stearns County Attorney, Michael J. Lieberg, Assistant Stearns County Attorney, St. Cloud, MN, for respondent.

## OPINION

GILDEA, Justice.

Appellant Eric Maurice Wright appeals the postconviction court's summary dismissal of his petition for postconviction relief. In 2005, a Stearns County jury found Wright guilty of the first-degree premeditated murder of 82–year–old Raymond Wander. The district court convicted Wright and sentenced him to life in prison without the possibility of parole. On direct appeal, we affirmed Wright's conviction and sentence. *State v. Wright*, 719 N.W.2d 910, 919 (Minn.2006).[1] Specifically, we held that: (1) the district court

---

1. The facts underlying Wright's conviction are set forth in our opinion on Wright's direct appeal, and will be recited in this opinion only as necessary to the resolution of the claims Wright raises in this appeal.

did not abuse its discretion by admitting *Spreigl*[2] evidence of Wright's prior assault, *id.* at 918; (2) the prosecutor did not commit misconduct, *id.* at 918–19; (3) Wright's sentence was not unlawfully determined, *id.* at 919; and (4) Wright's trial counsel did not provide ineffective assistance, *id.* Wright subsequently filed a postconviction petition, and the postconviction court denied all claims without conducting an evidentiary hearing. Wright appeals, raising 13 claims that he argues warrant an evidentiary hearing or a new trial.[3] We affirm.

## I.

▇▇ We first consider whether the postconviction court erred by summarily denying Wright's postconviction petition as a "second or successive petition" under Minn.Stat. § 590.04, subd. 3 (2008). Minnesota Statutes section 590.04, subdivision 3 provides, in relevant part, "The court may summarily deny a second or successive petition for similar relief on behalf of the same petitioner and may summarily deny a petition when the issues raised in it have previously been decided by the Court of Appeals or the Supreme Court in the same case." The postconviction court summarily denied all of Wright's postconviction claims under this provision because, according to the court, Wright raised his claims in successive postconviction "motions." We review a postconviction court's findings of fact for abuse of

discretion and its legal conclusions de novo. *Arredondo v. State,* 754 N.W.2d 566, 570 (Minn.2008).

Wright filed a petition for postconviction relief on June 5, 2008. The court did not issue a final disposition on Wright's petition until August 21, 2008. In the interim, the court considered Wright's May 22, 2008 motion for the release of the grand jury transcripts. After the court denied the motion for transcripts for lack of good cause shown, Wright submitted a letter to the court on July 3, 2008, asking the court to reconsider that motion. The court characterized this letter as a "successive postconviction motion" for purposes of Minn. Stat. § 590.04, subd. 3. But the court had not yet ruled on the June 5 petition for postconviction relief, and the July 3 letter did not raise any postconviction claims. The court therefore should not have considered it to be a "successive petition" for purposes of the statute.

Before the postconviction court ruled on the June 5, 2008 petition, Wright also filed a "motion" on August 8 that added a "new evidence" issue to his postconviction petition. The court characterized this motion as a "successive petition" supporting summary dismissal under Minn.Stat. § 590.04, subd. 3. But the August 8 motion was not a separate petition; it was an amendment to the pending June 5 petition. The legislature contemplated such amendments in the postconviction statute. *See* Minn.Stat.

2. In *State v. Spreigl,* 272 Minn. 488, 496–97, 139 N.W.2d 167, 173 (1965), we held that "where the state seeks to prove that an accused has been guilty of additional crimes and misconduct on other occasions," the state must, "within a reasonable time before trial ... furnish[ ] defendant in writing a statement of the offenses it intends to show he has committed, described with ... particularly."

3. Wright's claims include: (1) prosecutorial misconduct, (2) ineffective assistance of trial counsel, (3) erroneous admission of *Spreigl*

evidence, (4) insufficiency of the evidence, (5) lack of an impartial jury, (6) violation of defendant's right to be present at trial, (7) evidence impeaching several trial witnesses, (8) unconstitutional opening of defendant's mail at the jail, (9) illegal evidence introduced at trial, (10) violation of *Miranda* rights, (11) denial of opportunity to enter a plea bargain, (12) ineffective assistance of appellate counsel, and (13) "new evidence" warranting a new trial.

§ 590.03 (2008) ("The court may at any time prior to its decision on the merits permit ... amendments [to the petition]. The court shall liberally construe the petition and any amendments thereto and shall look to the substance thereof and waive any irregularities or defects in form."). We therefore conclude that Wright's August 8, 2008 motion was not a "successive petition" for purposes of Minn. Stat. § 590.04, subd. 3.

In sum, Wright filed one postconviction petition on June 5, 2008, and one amendment to that petition on August 8, 2008. Wright also moved the court on July 3, 2008 to reconsider a motion to release grand jury transcripts. Because Wright did not file a "second or successive petition" for postconviction relief, Minn.Stat. § 590.04, subd. 3 does not apply here. Accordingly, we hold that the postconviction court erred to the extent it summarily denied Wright's claims under that provision of the postconviction statute.

## II.

■ In addition to supporting its denial of Wright's petition on the basis that it was a successive petition, the postconviction court also appears to have denied Wright's petition because the court concluded that Wright's claims are barred under the rule of *State v. Knaffla*, 309 Minn. 246, 252, 243 N.W.2d 737, 741 (1976) (holding that matters raised or known at the time of direct appeal will not be considered on petition for postconviction relief). With the exception of Wright's claim for ineffective assistance of appellate counsel and his claim that "new evidence" entitles him to a new trial, which we consider below, we agree with the postconviction court that *Knaffla* bars consideration of Wright's other 11 claims. See *supra* note 3 (listing 13 claims). Postconviction review of claims other than ineffective assis-

tance of appellate counsel and "new evidence" is barred because these claims are based on evidence in the trial record, and therefore these 11 claims were known or should have been known to Wright at the time of his direct appeal. *See White v. State*, 711 N.W.2d 106, 110 (Minn.2006) (stating that postconviction claims based on the trial record could have been known at the time of direct appeal and are therefore *Knaffla* barred).

■ There are two exceptions to operation of the *Knaffla* bar. If the defendant presents a novel legal issue or if the interests of justice require the court to review the claim, the *Knaffla* bar does not preclude postconviction review. *White*, 711 N.W.2d at 109. Wright does not present a novel legal issue in his postconviction petition. Instead, Wright requests that we review the merits of his otherwise barred claims in the interests of justice. To be reviewed in the interests of justice, a claim must have merit and must be asserted without deliberate or inexcusable delay. *Spears v. State*, 725 N.W.2d 696, 701 (Minn.2006) (citing *Deegan v. State*, 711 N.W.2d 89, 94 (Minn.2006)). After a painstaking review of the record, we hold that the interests of justice exception is not met and that Wright's claims, with the exception of his claims of ineffective assistance of appellate counsel and new evidence, are barred from review.

## III.

■ We turn next to Wright's argument that he received ineffective assistance from his appellate counsel on the direct appeal of his first-degree premeditated murder conviction. Claims of ineffective assistance of appellate counsel are properly raised in this postconviction petition because Wright did not know about this claim at the time of direct appeal, nor could he have known about this claim at

that time. *See, e.g., Leake v. State,* 737 N.W.2d 531, 536 (Minn.2007) (stating that an ineffective assistance of appellate counsel claim is properly raised in a postconviction petition if the basis of the claim was not part of the record before the appellate court). But a postconviction petition must include "a statement of the facts and the grounds upon which the petition is based and the relief desired." Minn.Stat. § 590.02, subd. 1(1) (2008). The postconviction court is not required to hold an evidentiary hearing if "the files and records of the proceeding conclusively show that the petitioner is entitled to no relief." Minn.Stat. § 590.04, subd. 1 (2008). To establish ineffective assistance of appellate counsel, the petitioner bears the burden of showing both that counsel's performance was not objectively reasonable and, but for counsel's errors, the result of the proceeding would have been different. *Fields v. State,* 733 N.W.2d 465, 468 (Minn.2007). The petitioner must overcome the "presumption that counsel's performance fell within a wide range of reasonable" representation. *Gail v. State,* 732 N.W.2d 243, 248 (Minn.2007).

Wright appears to present four grounds in support of his ineffective assistance of appellate counsel claim. He claims that counsel was ineffective because counsel (1) failed to adequately investigate trial records, (2) provided inaccurate information to this court on direct appeal, (3) failed to prevail on the *Spreigl* evidence issue on direct appeal, and (4) failed to raise five additional issues on direct appeal.[4]

With respect to the first three grounds, Wright does not support his claim with facts that demonstrate how his counsel acted unreasonably. Rather, on these three grounds Wright presents mere "argumentative assertions" that do not warrant an evidentiary hearing. *See Leake,* 737 N.W.2d at 535. We hold that the postconviction court did not err in denying relief on these grounds.

■ With respect to Wright's fourth ground in support of his ineffective assistance claim, that counsel failed to raise five additional issues on direct appeal, we recognize that counsel is under a duty to raise only meritorious claims. *Nunn v. State,* 753 N.W.2d 657, 661 (Minn.2008). Counsel does not act unreasonably by not asserting claims that counsel could have legitimately concluded would not prevail. *Id.*

■ Wright first argues that his appellate counsel should have raised a claim for ineffective assistance of trial counsel. Under our precedent, "[w]hen an ineffective assistance of appellate counsel claim is based on appellate counsel's failure to raise an ineffective assistance of trial counsel claim, the [petitioner] must first show that trial counsel was ineffective." *Fields,* 733 N.W.2d at 468. Trial counsel can be shown ineffective under the same standard applied to appellate counsel's performance—the petitioner must establish both that trial counsel's representation fell below an objective standard of reasonableness, and, but for counsel's mistakes, the result at trial would have been more favorable to the petitioner. *Wilson v. State,* 582 N.W.2d 882, 885 (Minn.1998) (stating standard for ineffective assistance of counsel claim).

Wright raised the ineffective trial counsel claim on direct appeal in his supple-

---

4. Specifically, Wright argues that his appellate counsel should have raised claims that (1) trial counsel was ineffective, (2) the State's expert witnesses were not qualified, (3) he was prejudiced by the use of the term "sus-

pect" to describe the perpetrator of the crime, (4) the evidence was insufficient, and (5) Wright's right to be present at all stages of the trial was violated.

mental pro se brief. We concluded that all grounds alleged in the appeal lacked merit because they were based on trial counsel's discretionary, tactical decisions. *Wright*, 719 N.W.2d at 919. To the extent Wright's claim on postconviction is based on the same grounds of ineffective assistance of trial counsel alleged on direct appeal, it fails. Wright also alleges numerous additional grounds for ineffective assistance of trial counsel.[5] But even assuming that any of trial counsel's conduct actually fell below the objective standard of reasonableness, Wright has not shown how but for the alleged errors, the result of his trial would have been different. In sum, Wright has not established that his trial counsel was ineffective. Because Wright has failed to show that his trial counsel was ineffective, his claim that his appellate counsel performed unreasonably by failing to raise an ineffective-assistance-of-trial-counsel claim also fails.

 Wright further argues that appellate counsel was ineffective because appellate counsel should have raised the claim that the State's expert witnesses were not qualified to testify as experts. We have reviewed the transcript and we conclude that the State's experts were qualified, under Minn. R. Evid. 702, to give expert testimony at trial. Appellate counsel was therefore not ineffective for choosing not to raise this claim.

 Wright next argues that appellate counsel should have raised a claim on appeal that Wright was prejudiced by the crime scene investigator's use of the term "the suspect" to describe the perpetrator of the crime. The transcript reads:

Q [by defense counsel on cross examination:] [ . . . ] And you indicated there was a large . . . laceration across his throat. Would that have produced that blood spatter?

A [by crime scene investigator:] [ . . . ] I don't think I could make that statement, whether it . . . came from that or . . . the suspect's hands hitting the blood in a certain area.

Q [:] I'm sorry. The suspect's hands hitting blood in a certain area?

[ . . . ]

A[:] I'm not sure I could differentiate whether the blood . . . was from the [neck] wound . . . or if it was from one of the other wounds.

Wright argues that the crime scene investigator's testimony accused him of the crime and should have been challenged on appeal. Generally, a defendant must have objected to prejudicial testimony at trial in order to challenge it on appeal. *State v. Fields*, 679 N.W.2d 341, 348 (Minn.2004) (citing *State v. Litzau*, 650 N.W.2d 177, [182] (Minn.2002)). Not only did defense counsel not object to the witness's use of the term "suspect," but defense counsel used the term himself. Moreover, the use of "suspect" does not necessarily implicate Wright in the crime. For these reasons, we conclude that it would not have been unreasonable for appellate counsel to have concluded that there would be no merit to a claim based on this testimony.

 Wright also contends, essentially, that appellate counsel should have argued on appeal that the evidence was not sufficient to support his conviction. When reviewing the sufficiency of the evi-

---

**5.** The additional grounds that Wright alleges are summarized in the following categories: 1) failure to impeach State's witnesses; 2) failure to call certain witnesses; 3) failure to present certain pieces of evidence; 4) what Wright calls denial of "compulsory process,"

including that his attorney was unprepared and did not share discovery documents with him; 5) discouraging defendant from entering a plea agreement, though the State did not offer one; and 6) false statements to the court.

dence to support a conviction, we conduct "a painstaking analysis of the record to determine whether the evidence, when viewed in a light most favorable to the conviction, was sufficient to permit the jurors to reach the verdict which they did." *State v. Webb*, 440 N.W.2d 426, 430 (Minn. 1989) (citing *State v. Martin*, 293 N.W.2d 54, 55 (Minn.1980)). We have reviewed the record. Given the DNA evidence tying Wright to the crime scene and the evidence of Wright's statement to hospital personnel that he recalled pulling a knife from the victim's back, appellate counsel could have legitimately concluded that a claim that the evidence was not sufficient would have lacked merit on direct appeal. Appellate counsel was therefore not ineffective for choosing not to raise this claim.

■■■ Wright finally argues that his appellate counsel should have raised a claim that Wright was denied his right to be present at all stages of trial. *See* Minn. R.Crim. P. 26.03, subd. 1; *State v. Sessions*, 621 N.W.2d 751, 755 (Minn.2001) (stating that a criminal defendant has the right to be present at all stages of trial under the Confrontation Clause of the Sixth Amendment). We review exclusion of the defendant from trial proceedings under a harmless error standard. *See State v. Hannon*, 703 N.W.2d 498, 506 (Minn.2005). During the trial, the judge, prosecutor, and defense counsel held a conference after the court adjourned for the day. Wright was not present for the conference. We have reviewed the transcript from the conference and it reflects that the court and attorneys discussed how the court would deal with a certain piece of audio evidence and whether a jury instruction indicating that the jury could ask to rehear the evidence would be necessary. We have held that the court's exclusion of a defendant from an in-chambers conference was harmless error where the court

considered only a question of law. *State v. Bouwman*, 354 N.W.2d 1, 8–9 (Minn.1984). In addition, Wright has not suggested any prejudice resulting from this conference. Appellate counsel therefore could have legitimately concluded that this claim lacked merit.

In sum, Wright has not demonstrated that his appellate counsel was ineffective. We therefore hold that the postconviction court did not err in denying Wright's petition for postconviction relief on the grounds of ineffective assistance of appellate counsel.

### IV.

■■■ We turn next to Wright's claim that "new biological evidence" discovered before trial, but not introduced at trial, entitles him to a new trial. Specifically, Wright points to a piece of glass found in the victim's driveway by a crime scene investigator that appeared to have some blood on it. The glass was given to the Minnesota Bureau of Criminal Apprehension ("BCA") and was mentioned in a BCA report submitted as evidence at trial. Wright argues that the possible blood on the glass should have been tested for a DNA profile. But the substance on the glass was not tested for a DNA profile because, according to the investigator's notes, it was determined that the amount of the substance was "insufficient for analysis and would need to be consumed entirely" in any testing.

■■■ In order to show that he is entitled to relief on the basis of new evidence, Wright has to show: "(1) that the evidence was not known to the defendant or his/her counsel at the time of the trial; (2) that the evidence could not have been discovered through due diligence; (3) that the evidence is not cumulative, impeaching, or doubtful; and (4) that the evidence would probably produce an acquittal or a more

favorable result." *Rainer v. State,* 566 N.W.2d 692, 695 (Minn.1997). Wright's new evidence claim fails at least the first two prongs of the *Rainer* test. The glass found in the driveway was discovered before trial, was available at trial, and was known to both Wright and his attorney when the crime scene investigator testified. Because Wright's "new evidence" claim fails to satisfy the *Rainer* test, we hold that the postconviction court did not err in denying Wright's petition.

Affirmed.