Harry Jerome EVANS, petitioner,
Appellant,

v.

STATE of Minnesota, Respondent.

No. A10–160.

Supreme Court of Minnesota.

Sept. 9, 2010.

Harry Jerome Evans, Bayport, MN, pro se.

Lori Swanson, Attorney General, Susan Gaertner, Ramsey County Attorney, Mitchell L. Rothman, Assistant County Attorney, St. Paul, MN, for respondent.

## OPINION

GILDEA, Chief Justice.

Following a jury trial, appellant Harry Jerome Evans was found guilty and convicted of first-degree murder of a peace officer in violation of Minn.Stat. § 609.185(a)(4) (2008).[1] The district court sentenced him to life in prison without the possibility of release. *See* Minn.Stat. § 609.106, subd. 2(1) (2008). We affirmed Evans' conviction in 2008 following a remand to the district court to develop a record on potential juror bias. *State v. Evans*, 756 N.W.2d 854, 881 (Minn.2008). In August 2009 Evans filed a pro se petition for postconviction relief in Ramsey County and the postconviction court de-

nied the petition. Evans now appeals the denial of his petition. We affirm.

This case arises from the shooting death of St. Paul Police Sergeant Gerald Vick. *Id.* at 859. The facts underlying Evans' conviction are set forth in our opinion on Evans' direct appeal, and are recited here only as necessary to the resolution of the claims Evans raises in this appeal.

On May 6, 2005, at approximately 2:00 a.m., Vick and his vice unit partner Sergeant Joseph Strong left Erick's Bar following an undercover investigation of prostitution. Strong noticed a tall, black male who appeared to be intoxicated. Strong later identified this man as Antonio Kelly. Both Strong and Vick observed Kelly urinating in public. Vick attempted to verbally persuade Kelly to leave the area, but Kelly approached both officers. Strong and Vick also noticed another black male who was "smaller in stature, rounder, [with] shorter hair," later identified as Harry Evans. Following several verbal warnings, Evans and Kelly began to move away from the bar. Strong then got into his car and began to drive away.

When Strong stopped at a stop light, Kelly reappeared and stepped in front of the left headlight of Strong's vehicle, and stood there looking at Strong. Strong called for backup and noticed that Evans was near Kelly. Upon receiving Strong's call for backup, Vick drove up on the sidewalk. Vick was "pushing" Evans and Kelly—in other words, he was running toward them, making noise and stomping his feet to let them know that he was behind them and that he wanted them to leave the area. Strong then heard three or four gunshots, saw Vick fall to the ground, and knew that Vick had been shot. Strong saw that Ev-

---

1. It is murder in the first degree to "cause[ ] the death of a peace officer or a guard employed at a Minnesota state or local correctional facility, with intent to effect the death of that person or another, while the peace officer or guard is engaged in the performance of official duties." Minn.Stat. § 609.185(a)(4).

ans was the person closest to Vick, and Strong identified Evans as "the person that was capable of shooting Sergeant Vick." Strong did not see Kelly after the shots were fired. Strong fired his weapon at Evans eight to ten times, but Evans ran through a yard and out of Strong's view. Strong returned to Vick, called for backup, and provided the officers who came to the scene with descriptions of the suspects and the direction in which they had fled.

Antonio Kelly testified at trial for the State. Kelly said that he heard shots, which he "assumed" came from Evans, and then he "took off." Kelly called out to Evans from where Kelly hid, less than half a block away. After joining Kelly in the bushes, Evans told Kelly, "I got him, I think I got one." Evans and Kelly hid on a porch for about 10 or 15 minutes, and Kelly saw Evans throw a gun over the side of the porch. Later that night, the police separately apprehended Kelly and Evans based on descriptions given by Strong and based on footage from a nearby 3M security camera that recorded a portion of the confrontation between Vick and Strong and Kelly and Evans.

J.M. also testified for the State. J.M. was with his parents traveling home from a visit to Regions Hospital. J.M. was seated in the front passenger seat of his parents' van. J.M. testified that he saw the shorter, stockier man (Evans) shoot Vick.

The police found a .38–caliber revolver outside a residence near the scene of the crime. The bullet recovered from Vick's body was a .38–caliber bullet. Four .38–caliber shell casings were also recovered near the scene of the crime. Additionally, DNA testing done on the trigger, the ejector rod, and the cylinder release of the .38–caliber revolver revealed a mixture of DNA from two or more individuals. Al-

though Kelly and Vick were excluded as possible contributors, Evans could not be excluded. A .38–caliber cartridge was also found in a pair of jeans on the living room floor of Evans' residence.

The jury found Evans guilty of first-degree murder of a peace officer, in violation of Minn.Stat. § 609.185(a)(4). The district court sentenced him to life in prison without the possibility of release. On direct appeal, Evans raised five issues in addition to numerous pro se arguments, and we affirmed. Specifically, we held that: (1) the district court did not commit plain error by allowing the State to contact a juror after a *Schwartz* hearing[2] was granted; (2) the district court's finding that Evans failed to prove that a juror made a racially-biased comment or was otherwise racially-biased was not clearly erroneous; (3) Evans' Sixth Amendment right to confrontation was not violated by in camera review of J.M.'s medical records; (4) the district court did not err in instructing the jury that Evans need not have known or have had reason to know that Vick was a peace officer to be convicted under Minn.Stat. § 609.185(a)(4); (5) the district court did not err in declining to provide an accomplice instruction to the jury; and (6) evidence presented about Vick's life was not unduly prejudicial. *Evans*, 756 N.W.2d at 869, 871, 874, 876–79.

Following resolution of his direct appeal, Evans learned from his appellate counsel:

> that statements relating to your case were made to St. Paul police during an investigation into a 2008 murder. The statement or statements were made to Sgt. Payne by a possible witness in the trial of a[nother] person.... The possible witness, named McClinton, told police that he was told by Antonio Kelly that Kelly shot Sgt. Gerald Vick.

---

2. *See Schwartz v. Minneapolis Suburban Bus Co.*, 258 Minn. 325, 104 N.W.2d 301 (1960).

On June 29, 2009, Evans contacted the State to obtain McClinton's statement and related police reports, but the State did not immediately respond to Evans' request.

In August 2009 Evans filed a pro se petition for postconviction relief, arguing among other things, that he was entitled to a new trial or an evidentiary hearing based on newly discovered evidence in the form of McClinton's statement to police. In November 2009, the postconviction court granted the State's motion to dismiss Evans' petition for postconviction relief and denied Evans' requests for a new trial or an evidentiary hearing.

Following the dismissal of his petition for postconviction relief, Evans filed a motion to compel disclosure of McClinton's statement and related reports made by Sgt. Payne. Meanwhile, Evans filed a petition for writ of mandamus in the court of appeals, requesting that the court require the postconviction court to order the State to disclose the statement and related reports. The court of appeals denied Evans' petition for a writ of mandamus.

On February 11, 2010, the postconviction court denied Evans' motion to compel. The court held that Minn.Stat. ch. 590 (2008) does not provide for postconviction discovery and that, the Minnesota Rules of Criminal Procedure did not apply in the postconviction context. Moreover, the court noted that the State had informed Evans of the proper procedure to obtain the statement pursuant to the Minnesota Government Data Practices Act, Minn. Stat. ch. 13 (2008) (MGDPA). The State

subsequently sent Evans a letter, explaining that the transcripts were "classified as confidential or protected nonpublic information by section 13.82, subd. 7, of the [MGDPA]" and Evans would be unable to obtain a copy of any of the documents "without a court order specifically authorizing the Ramsey County Attorney's Office to release copies" to him.

Evans now appeals the postconviction court's denial of his pro se petition for postconviction relief.

I.

Evans first argues that the postconviction court erred by failing to grant a new trial or an evidentiary hearing on his claims of ineffective assistance of trial counsel. He also argues that errors made by the district court during trial entitle him to postconviction relief. We address each argument in turn.

A.

■ With respect to his claim of ineffective assistance, Evans argues that he received ineffective assistance of trial counsel based on counsel's failure to raise the following issues: (1) violation of *Miranda* rights because Evans was not read his rights; (2) unlawful arrest warrant; (3) violation of his Fourth Amendment rights; (4) challenges to subject matter jurisdiction and personal jurisdiction; (5) improper post-arrest booking procedure; and (6) agreeing to a subpoena cover letter sent to prospective *Schwartz* hearing witnesses.[3]

---

3. On appeal, Evans raised for the first time the issue regarding trial counsel's failure to challenge the seizure of his pants during the execution of a search warrant. Because Evans did not raise this issue in his petition, we will not consider it on appeal. *See Azure v. State*, 700 N.W.2d 443, 447 (Minn.2005). Evans similarly did not argue in his postconvic-

tion petition that the district court was biased and knowingly violated his right to be present at proceedings during which the parties discussed a cover letter that would accompany subpoenas to prospective *Schwartz* hearing witnesses. Evans has therefore waived consideration of that issue. *See Azure*, 700 N.W.2d at 447.

In *State v. Knaffla,* we stated, "where direct appeal has once been taken, all matters raised therein, and all claims known but not raised, will not be considered upon a subsequent petition for postconviction relief." 309 Minn. 246, 252, 243 N.W.2d 737, 741 (1976). There are two exceptions to this rule: (1) a claim that was known but not raised may be considered if the claim is so novel that its legal basis was not reasonably available at the time of the direct appeal; and (2) a claim that fairness requires us to consider and when the petitioner did not "deliberately and inexcusably" fail to raise the issue on direct appeal. *Russell v. State,* 562 N.W.2d 670, 672 (Minn.1997).

Evans' ineffective assistance of trial counsel claims are *Knaffla*-barred because all of these claims are based on the trial record. *See Knaffla,* 309 Minn. at 252, 243 N.W.2d at 741; *Vance v. State,* 752 N.W.2d 509, 514 (Minn.2008) (noting that ineffective assistance of trial counsel claims were *Knaffla*-barred because they were based on facts that the petitioner knew or should have known of at the time of his direct appeal). Evans' final claim— that trial counsel improperly agreed that a letter be sent to prospective *Schwartz* hearing witnesses—is also *Knaffla*-barred because it could have been raised as part of Evans' direct appeal, which occurred after the *Schwartz* hearing. *See Knaffla,* 309 Minn. at 252, 243 N.W.2d at 741; *Evans,* 756 N.W.2d at 867–69 (addressing Evans' argument that alleged errors during the *Schwartz* hearing entitled Evans to a new trial). Additionally, none of the claims are "so novel that [their] legal basis was not reasonably available at the time of the direct appeal" and fairness does not require consideration of these claims following Evans' direct appeal. *See Russell,* 562 N.W.2d at 672. We therefore hold that Evans is not entitled to postconviction

relief based on claims of ineffective assistance of trial counsel.

**B.**

We consider next Evans' claim that he is entitled to postconviction relief based on errors of the district court. Evans claims that the district court violated his right to allocution at sentencing and that the court erroneously determined that Vick was performing official duties at the time of the shooting. These claims are *Knaffla*-barred because they are based on the trial record. *See Wright v. State,* 765 N.W.2d 85, 90 (Minn.2009). Moreover, as to Evans' claim that Vick was not performing official duties, we already considered and rejected Evans' claim on direct appeal, concluding that there was sufficient evidence showing that Vick was performing official duties when he was murdered. *Evans,* 756 N.W.2d at 879–80; *see also* Minn. Stat. § 590.04, subd. 3 (2008) ("The court may summarily deny ... a petition when the issues raised in it have previously been decided by ... the Supreme Court."). We therefore hold that Evans is not entitled to postconviction relief based on claims that the district court erred.

**II.**

We turn next to Evans' argument that he received ineffective assistance from counsel who handled his direct appeal. Ineffective assistance of appellate counsel claims are not subject to the *Knaffla*-bar where it cannot be said that petitioner knew or had a basis to know about the claim at the time of direct appeal. *See Wright,* 765 N.W.2d at 90–91. But the postconviction court is not required to hold an evidentiary hearing on such claims if "the files and records of the proceeding conclusively show that the petitioner is entitled to no relief." Minn.Stat. § 590.04, subd. 1. A petitioner is entitled

to an evidentiary hearing for ineffective assistance claims only if he alleges facts in the petition that, if proved, would show "both that counsel's performance was not objectively reasonable and, but for counsel's errors, the result of the proceeding would have been different." *Wright,* 765 N.W.2d at 91. The petitioner must overcome the presumption that counsel's performance fell within a wide range of reasonable representation. *Id.* Additionally, appellate counsel is not ineffective for failing to raise issues that themselves have no merit. *See Leake v. State,* 737 N.W.2d 531, 543 (Minn.2007).

Evans claims that he received ineffective assistance of appellate counsel because counsel failed to: (1) file a motion seeking independent counsel for Evans to handle the *Schwartz* hearing; and (2) request an evidentiary hearing on Evans' ineffective assistance of trial counsel claims. The postconviction court concluded that Evans failed to show that appellate counsel's performance fell below an objective standard of reasonableness and otherwise failed to establish that he was prejudiced by counsel's performance.

■ With respect to his first claim, Evans argues that had appellate counsel filed a motion for independent counsel, there is a reasonable possibility that questions asked to the allegedly racially biased juror during the *Schwartz* proceedings would have been different. Although Evans argues that the questions posed to the juror would have been different, he does not describe how the result of the hearing would have been different had appellate counsel sought the appointment of independent counsel for the *Schwartz* hearing. His claim therefore fails.

■ Evans also argues that his appellate counsel was ineffective for not pursuing his claims that trial counsel was ineffective. Specifically, Evans argues that

his appellate counsel should have pursued the ineffective assistance of trial counsel claims that we held above were subject to the *Knaffla*-bar. We have said, "When an ineffective assistance of appellate counsel claim is based on appellate counsel's failure to raise an ineffective assistance of trial counsel claim, the [petitioner] must first show that trial counsel was ineffective." *Fields v. State,* 733 N.W.2d 465, 468 (Minn.2007). Appellate counsel is under a duty to raise only the most meritorious claims, not all possible claims. *Nunn v. State,* 753 N.W.2d 657, 661 (Minn.2008). Counsel does not act unreasonably by excluding claims that counsel could have legitimately concluded would not prevail. *Id.*

Although we concluded that Evans' ineffective assistance of trial counsel claims are *Knaffla*-barred, we must nonetheless determine whether the performance of Evans' trial counsel was ineffective to resolve Evans' claims of ineffective assistance of appellate counsel. *See Leake,* 737 N.W.2d at 540. We turn next to consideration of these claims.

■ Evans first argues that he received ineffective assistance of trial counsel because counsel failed to argue that police violated Evans' Fifth Amendment rights. Specifically, Evans argues that his rights were violated because police did not read his *Miranda* rights before they asked Evans to state his name. Evans' disclosure of his name is not incriminating testimony that is protected by the Fifth Amendment privilege against self-incrimination, *see Hiibel v. Sixth Judicial Dist. Court of Nevada,* 542 U.S. 177, 178–79, 124 S.Ct. 2451, 159 L.Ed.2d 292 (2004), and trial counsel was therefore not ineffective in failing to raise this issue.

■ Evans next argues that he received ineffective assistance of trial coun-

sel because counsel did not raise issues regarding the police taking his picture and DNA sample, which he contended violated his right against self-incrimination. State regulations provide that upon booking, a jail may both fingerprint and photograph an arrestee, Minn. R. 2911.0200, subp. 7 (2009), and the extraction of blood evidence from an arrestee has been determined not to violate a defendant's right against self-incrimination if it is performed in a reasonable manner. *See Schmerber v. California*, 384 U.S. 757, 768, 86 S.Ct. 1826, 16 L.Ed.2d 908 (1966). Accordingly, Evans' counsel was not ineffective for failing to raise these issues.

 Evans next argues that his trial counsel should have argued that the warrant for Evans' arrest did not properly identify him because his name was printed in all capital letters. Minnesota Rule of Criminal Procedure 3.02, subd. 1, requires that an arrest warrant "contain the name of the defendant, or, if unknown, any name or description by which the defendant can be identified with reasonable certainty" and does not prescribe any format by which the name is to appear on the warrant. Evans' argument that trial counsel should have raised this issue therefore fails.

Evans also contends that trial counsel was ineffective because counsel failed to raise the issue that the district court lacked subject matter jurisdiction. Specifically, Evans argues that Minn.Stat. § 609.185(a)(4)—the statute under which he was convicted-lacks an enacting clause pursuant to Minn. Const. art. IV, § 22. Because Minn.Stat. § 609.185(a)(4) was enacted with a proper enacting clause and title, Evans' argument fails. *See* Act of

May 19, 1981, ch. 227, § 9, 1981 Minn. Laws 1006, 1007, 1010 (including enacting clause and title, "[a]n act relating to crimes") (codified at Minn.Stat. § 609.185(a)(4)); *see also Thompson v. State*, 691 N.W.2d 841, 843 n. 3 (Minn. 2005) (noting that enacting clause and improper title claims, which were *Knaffla*-barred, also failed on the merits). We also reject Evans' argument that the statute became void when published by the Revisor of Statutes. *See Thompson*, 691 N.W.2d at 843 n. 3 (explaining that the statutes compiled by the Revisor's Office were not new enactments but were merely evidence of the session laws). In short, the statute was validly enacted, the district court had subject matter jurisdiction, and counsel was not ineffective for failing to contend otherwise.[4]

Evans next argues that trial counsel was ineffective because counsel failed to challenge the district court's personal jurisdiction. Under Minnesota law, a person may be convicted and sentenced under the laws of this state if that person "commits an offense in whole or in part within this state." Minn.Stat. § 609.025(1) (2008). Evans was convicted and sentenced in Ramsey County District Court, which is the county where the crime was committed. The district court therefore had personal jurisdiction over Evans, and trial counsel was not ineffective in failing to raise the claim.

 Evans also argues that trial counsel should have challenged the constitutionality of the search warrant issued for his residence. Evans specifically argues that there was an insufficient nexus between the crime and his residence, where a pair of jeans with a .38–caliber cartridge in

---

4. To the extent that Evans makes other subject matter jurisdiction arguments outside of issues with the enactment clause or title of the statute, the Minnesota Constitution provides that the "district court has original jurisdiction in all civil and criminal cases and shall have appellate jurisdiction as prescribed by law." Minn. Const. art. VI, § 3.

the pocket was seized. But the crime was committed at approximately 2 a.m. on May 6, 2005, and Evans was not arrested until approximately 4 hours later. The lapse of time between the shooting and Evans' arrest would have given Evans time to dispose of any evidence of the crime at his residence. Additionally, Sergeant Patricia Englund of the St. Paul Police Department, who executed the search warrant for Evans' residence, testified that the warrant had not been executed until the afternoon following the shooting—after Evans had already been arrested for Vick's murder. Evans does not dispute this timeline and he does not otherwise explain why there was insufficient probable cause supporting the search warrant issued for his residence. *See State v. Fort,* 768 N.W.2d 335, 342 (Minn.2009) ("A search warrant is supported by probable cause if there is a fair probability that contraband or evidence of a crime will be found in a particular place." (citation omitted) (internal quotation marks omitted)). Because Evans cannot meet his burden to show that his trial counsel was ineffective with mere argumentative assertions, his claim that counsel was ineffective fails. *See Leake,* 737 N.W.2d at 543.

■ Evans finally argues that his trial counsel was ineffective because counsel agreed to a subpoena cover letter sent to prospective *Schwartz* hearing witnesses. This claim fails because Evans does not explain how the cover letter affected the witnesses' testimony or how the outcome of the hearing would have been different. Therefore, Evans has not established that his trial counsel was ineffective. *See Wright,* 765 N.W.2d at 92.

Because Evans has not established that his trial counsel was ineffective, appellate counsel was not ineffective in failing to bring these claims. *See Williams v. State,* 764 N.W.2d 21, 31–32 (Minn.2009). We

therefore hold that the postconviction court did not err in denying Evans postconviction relief on the grounds of ineffective assistance of appellate counsel.

### III.

■ We now turn to the question of whether Evans is entitled to either a new trial or an evidentiary hearing based on Kelly's alleged statement that he shot Vick. In his petition for postconviction relief, Evans asserts that Kelly testified falsely at his trial, and he supports this assertion with a reference to McClinton's statement that Kelly told McClinton that Kelly shot Vick.

Evans alleges two things through McClinton's statement: (1) Kelly's trial testimony was false when Kelly said that Evans shot Vick; and (2) Kelly admitted to McClinton that Kelly shot Vick. We are thus faced with recanted testimony—Kelly's alleged admission that he lied in his trial testimony that Evans shot Vick—and newly discovered evidence—Kelly's admission that he was the one who shot Vick. We consider each argument in turn.

■ We apply a three-prong test known as the *Larrison* test to determine whether a petition for postconviction relief warrants a new trial based on recanted trial testimony. *Ferguson v. State (Jermaine II),* 779 N.W.2d 555, 559 (Minn. 2010) (citing *Larrison v. United States,* 24 F.2d 82, 87–88 (7th Cir.1928), *overruled by United States v. Mitrione,* 357 F.3d 712, 718 (7th Cir.2004), *vacated and remanded on other grounds,* 543 U.S. 1097, 125 S.Ct. 984, 160 L.Ed.2d 988 (2005)). A petitioner is entitled to a new trial based on recanted trial testimony under *Larrison* only if: "(1) the court [is] ... reasonably well-satisfied that the trial testimony was false; (2) without the false testimony, the jury might have reached a different conclusion; and (3) the petitioner was taken by sur-

prise at trial or did not know of the falsity until after trial." *Jermaine II,* 779 N.W.2d at 559 (citation omitted). Evans has the burden of establishing, by a fair preponderance of the evidence, facts that warrant relief. *See State v. Ferguson (Jermaine I),* 742 N.W.2d 651, 659 (Minn. 2007).[5] Because our analysis of the second prong of *Larrison* is dispositive of this appeal, we do not decide whether the post-conviction court abused its discretion under the first prong of *Larrison. See Opsahl v. State,* 710 N.W.2d 776, 782–83 (Minn.2006) (explaining that it was unnecessary to consider the second and third prongs of *Larrison* where the petitioner failed to satisfy the first prong).

■ Under the second prong of *Larrison,* we ask "whether the jury might have found the defendant not guilty if the recanting witness had not testified." *State v. Turnage,* 729 N.W.2d 593, 599 (Minn.2007). Although the postconviction court did not cite *Larrison* in its order, the court concluded that Evans had not submitted material that "would have changed the verdict." Additionally, the postconviction court relied on evidence in the form of "[o]ther witnesses at trial, surveillance video, and forensic evidence" that "corroborate the testimony by Mr. Kelly that he was not the shooter and that Mr. Evans was" to conclude that Evans was not entitled to postconviction relief.

The postconviction court did not abuse its discretion when it concluded that Evans failed to show that the jury might have reached a different conclusion absent Kelly's testimony. Although Kelly was an important witness for the State, Kelly was not the only one who testified regarding Evans' involvement in Vick's murder. It was J.M.—not Kelly—who actually saw

and identified Evans as the one who shot Vick. *Evans,* 756 N.W.2d at 861. In addition, Strong's testimony placed Evans as the one closest to Vick and identified Evans as "the person that was capable of shooting Sergeant Vick." *Id.* at 860–61. Strong's testimony was corroborated by a 3M security videotape that placed Evans at the scene of the crime in the confrontation between Strong, Vick, Evans and Kelly. *Id.* at 861.

Physical evidence also linked Evans to the shooting. *Cf. Opsahl v. State,* 677 N.W.2d 414, 424 (Minn.2004) (concluding that the postconviction court abused its discretion in concluding that the jury would have reached the same verdict without recanted testimony, where there was no physical evidence that tied the petitioner to the murder). Upon execution of a search warrant for Evans' residence, police discovered a pair of jeans with a .38–caliber cartridge, and the bullet recovered from Vick's body was a .38–caliber bullet. Additionally, DNA evidence linked Evans to the shooting. Although Kelly and Vick were excluded as possible contributors to the DNA discovered on the trigger, ejector rod, and cylinder release of the .38–caliber revolver found near the scene of the crime, Evans could not be excluded as a contributor.

Based on all of this other evidence, we conclude that Evans has not demonstrated that the jury might have acquitted him if Kelly had not testified. *See Doppler v. State,* 771 N.W.2d 867, 872–73 (Minn.2009) (concluding that the second *Larrison* prong was not met because the testimony of recanting witness was supported by other evidence); *Turnage,* 729 N.W.2d at 600 (finding that petitioner had not met his

---

**5.** There are three relevant cases regarding two petitioners with the last name Ferguson (Jermaine Ferguson and Alonzo Ferguson).

For clarity, we refer to the cases in short citation form by the petitioners' first names.

burden under the second *Larrison* prong because the recanting witness' testimony was corroborated by testimony from other witnesses). Because Evans did not satisfy the second prong of the *Larrison* test, we hold that the postconviction court did not err in denying Evans' petition and request for a new trial or evidentiary hearing based on McClinton's statement including Kelly's alleged recanted testimony.

### IV.

We turn next to consider whether Evans is otherwise entitled to a new trial on the basis of new evidence. Specifically, Evans argues that he is entitled to a new trial because of McClinton's statement that Kelly told McClinton that Kelly shot Vick. In order for postconviction relief to be granted on the basis of newly discovered evidence, a petitioner must establish: "(1) that the evidence was not known to the defendant or his/her counsel at the time of the trial; (2) that the evidence could not have been discovered through due diligence before trial; (3) that the evidence is not cumulative, impeaching, or doubtful; and (4) that the evidence would probably produce an acquittal or a more favorable result." *Rainer v. State*, 566 N.W.2d 692, 695 (Minn. 1997) (citation omitted).

We need go no further in the analysis than the first prong of *Rainer*. Our precedent recognizes that if the source of the "newly discovered" evidence was with the defendant at the scene of the crime, the first prong of the *Rainer* analysis is not met. *See Whittaker v. State*, 753 N.W.2d 668, 671–72 (Minn.2008) (rejecting newly discovered evidence claim under the first prong of *Rainer* because "testimony cannot be 'unknown' if the petitioner was admittedly present at the time of the events the witness purports to describe."); *Pierson v. State*, 637 N.W.2d 571, 577 (Minn. 2002) (concluding that the petitioner "undoubtedly knew that [the witness] had information regarding [petitioner's] involvement" where the petitioner and witness were together during the events in question). Evans was with Kelly and so, assuming the truth of McClinton's statement, Evans knew that Kelly shot Vick. Consequently, the "new evidence" that Kelly shot Vick was known to Evans, and Evans' argument therefore fails the *Rainer* test. Because Evans has failed to satisfy the first element of *Rainer*, we hold that the postconviction court did not err in denying Evans' petition without an evidentiary hearing.

### V.

Finally, Evans argues that the State should have produced to him the police statement in which McClinton recounts Kelly's admission to the murder and Evans contends that the denial of this discovery violated his right to due process.[6] The State contends that because the investigation in which McClinton made the alleged statement is not yet inactive, the police reports were not public under state law. *See* Minn.Stat. § 13.82, subd. 7 (2008) (noting that "investigative data ... is confidential or protected nonpublic while the investigation is active."). Under the

6. Only the postconviction court's order denying Evans postconviction relief is before us. Evans' motion to compel disclosure of evidence (McClinton's statement and related police reports) was filed after his postconviction relief petition was denied. Additionally, Evans petitioned the court of appeals for a writ of mandamus requiring the postconviction court to order discovery of McClinton's statement and related police reports. The court of appeals denied Evans' petition for a writ of mandamus, and Evans did not appeal that denial to our court. But, because the State does not contend that the issue is not properly part of Evans' appeal, we consider the issue.

statute, the district court has discretion to order the production of the investigative data and "consider[s] whether the benefit to the person bringing the action or to the public outweighs any harm to the public, to the agency or to any person identified in the data." Minn.Stat. § 13.82, subd. 7(c).

We need not decide whether, as Evans argues, he was entitled to discovery of the police records. It is not necessary for us to decide if the district court erred because any error was harmless. Evans did not need the police records in order to identify McClinton, the source of Kelly's alleged admission. And Evans has not demonstrated that the police records were otherwise necessary to the discovery of any additional information that would have been relevant to his petition. Accordingly, we hold that any error committed by the postconviction court in refusing to order the State to produce the police reports was harmless.

Affirmed.

STRAS, J., not having been a member of this court at the time of the argument and submission, took no part in the consideration or decision of this case.