STATE OF MINNESOTA

IN SUPREME COURT

A14-1198

Hennepin County                                                                    Gildea, C.J.

Chaun Dubae Carridine,

              Appellant,

vs.                                                              Filed:  July 29, 2015
                                                                 Office of Appellate Courts
State of Minnesota,

              Respondent.

_____


Chaun Dubae Carridine, Stillwater, Minnesota, pro se.

Lori Swanson, Attorney General, Saint Paul, Minnesota; and

Michael O. Freeman, Hennepin County Attorney, Linda K. Jenny, Assistant Hennepin County Attorney, Minneapolis, Minnesota, for respondent.
_____

S Y L L A B U S

1.      The postconviction court did not abuse its discretion when it summarily denied appellant's claims that the district court erred in admitting impeachment evidence, the prosecutor committed misconduct, appellant's trial counsel was ineffective, and an affidavit represented newly discovered evidence, because those claims were procedurally barred.

2.     The postconviction court did not abuse its discretion when it summarily denied appellant's ineffective-assistance-of-appellate-counsel claim because the facts alleged in the petition, even if proven by a preponderance of the evidence, fail to satisfy the *Strickland* test.

3.     The postconviction court did not abuse its discretion when, following an evidentiary hearing, it denied appellant's newly discovered evidence claim because the record supports the court's finding that the testimony of the newly discovered witnesses was doubtful.

Affirmed.

Considered and decided by the court without oral argument.

O P I N I O N

GILDEA, Chief Justice.

This case comes to us on appeal from the denial of Chaun Dubae Carridine's petition for postconviction relief.  Carridine filed a petition for postconviction relief, alleging a number of claims.  The postconviction court summarily denied relief on all claims but the claim of newly discovered evidence based on two affidavits.  The court granted an evidentiary hearing on the newly discovered evidence claim based on these affidavits.  After the hearing, the postconviction court denied relief on that claim as well.  Carridine appeals.  Because the postconviction court did not abuse its discretion when it denied Carridine's request for postconviction relief, we affirm.

Following a jury trial, Carridine was convicted of first-degree murder for the killing of Lorenzo Guffie.  It is undisputed that on the night of June 3, 2007, Carridine

2

shot Guffie while Guffie was in a car outside of a bar in Minneapolis.[1] Guffie died as a result of the shooting, and the State charged Carridine with first-degree premeditated murder. Carridine argued at trial that he acted in self-defense. Specifically, Carridine claimed that Guffie's car swerved and hit Carridine, and that Guffie pulled out a gun and threatened Carridine, so Carridine had no choice but to use his gun. The jury found Carridine guilty of first-degree premeditated murder, and the district court convicted Carridine and sentenced him to life in prison. We affirmed the conviction. *State v. Carridine*, 812 N.W.2d 130, 151 (Minn. 2012). Carridine then pursued postconviction relief.

The postconviction procedural history is complex, but in sum, Carridine filed a pro se petition for postconviction relief alleging a number of claims, including ineffective assistance of appellate counsel and newly discovered evidence based on the affidavits of De'Angelo Madison, Eric Hawkins, and John Hill. The postconviction court granted an evidentiary hearing based on the affidavits of Madison and Hill, but summarily denied relief on all of the other claims. After the evidentiary hearing, the postconviction court denied the newly discovered evidence claim, concluding that the testimony of Madison

---

[1]     Our opinion in *State v. Carridine*, 812 N.W.2d 130 (Minn. 2012), contains a detailed factual description of the murder and the evidence presented at trial. Our discussion in this opinion is limited to the facts directly relevant to this petition.

and Hill was not credible and likely would not produce a more favorable result for Carridine. This appeal followed.[2]

## I.

We first consider Carridine's argument that the postconviction court abused its discretion when it summarily denied some of his claims. A postconviction court may summarily deny claims without holding an evidentiary hearing when the "files and records of the proceeding conclusively show that the petitioner is entitled to no relief." Minn. Stat. § 590.04, subd. 1 (2014). The petitioner "has the burden of alleging facts that, if proven, entitle him to relief." *State v. Hokanson*, 821 N.W.2d 340, 357 (Minn. 2012). Moreover, "a petition may be denied if the petitioner's allegations are no more than argumentative assertions without factual support." *Id.* (citation omitted). We review the summary denial of a petition for postconviction relief for an abuse of discretion. *Sontoya v. State*, 829 N.W.2d 602, 603 (Minn. 2013). Legal issues are reviewed de novo, but review of factual matters is limited to determining whether there is sufficient evidence in the record to sustain the postconviction court's findings. *Vance v. State*, 752 N.W.2d 509, 512 (Minn. 2008). When applying this standard, "a matter will not be reversed unless the postconviction court exercised its discretion in an arbitrary or

---

[2] Carridine filed an amended brief after receiving the transcript of the postconviction evidentiary hearing. The State filed a motion to strike the amended brief because it was not timely served on the State. Although we expect pro se appellants to comply with the service rules, we deny the State's motion because the State filed a response to Carridine's amended brief, and the amended brief addresses essentially the same issues as Carridine's original brief.

capricious manner, based its ruling on an erroneous view of the law, or made clearly erroneous factual findings." *Reed v. State*, 793 N.W.2d 725, 729 (Minn. 2010).

A.

The postconviction court summarily denied relief on claims alleging error in the admission of impeachment evidence, prosecutorial misconduct, and ineffective assistance of trial counsel. The court also summarily denied the newly discovered evidence claim based on the affidavit of Eric Hawkins. Because all of these claims were based on the trial record and were or could have been raised on direct appeal, the postconviction court held that these claims were procedurally barred. *See* Minn. Stat. § 590.01, subd. 1 (2014) ("A petition for postconviction relief after a direct appeal has been completed may not be based on grounds that could have been raised on direct appeal of the conviction or sentence."); *see also State v. Knaffla*, 309 Minn. 246, 252, 243 N.W.2d 737, 741 (1976) ("[W]here direct appeal has once been taken, all matters raised therein, and all claims known but not raised, will not be considered upon a subsequent petition for postconviction relief."). We agree with the postconviction court.

A postconviction court need not hold an evidentiary hearing when the "files and records of the proceeding conclusively show that the petitioner is entitled to no relief." Minn. Stat. § 590.04, subd. 1. Because Carridine's claims are procedurally barred, the record conclusively establishes that he is not entitled to relief. Carridine's claim that the district court erred in admitting impeachment evidence and his claim based on Hawkins' affidavit are barred because Carridine raised these claims on direct appeal. *Carridine*,

5

812 N.W.2d at 141-42.[3]  And the claims of prosecutorial misconduct and ineffective assistance of trial counsel could have been raised on direct appeal because the claims are based on the trial record.  *See Torres v. State*, 688 N.W.2d 569, 572 (Minn. 2004) (noting that a claim of ineffective assistance of trial counsel that can be decided on the trial court record must be raised on direct appeal or it is procedurally barred).  All of the claims on which the postconviction court denied relief therefore are barred under Minn. Stat. § 590.01, subd. 1 or *Knaffla*.

We have recognized two exceptions to the *Knaffla* bar:  a claim should be considered if it is "(1) an issue so novel that its legal basis was not reasonably available at the time of the direct appeal, or (2) in the interest of justice—when fairness so requires and the petitioner did not deliberately and inexcusably fail to raise the issue on direct appeal."  *Quick v. State*, 757 N.W.2d 278, 280 (Minn. 2008).  We have not yet decided whether those two exceptions also apply in the context of the procedural bar in section 590.01, subdivision 1.  *See Nissalke v. State*, 861 N.W.2d 88, 94 n.4 (Minn. 2015) (discussing the *Knaffla* exceptions and the unresolved issues raised by the 2005 amendment to Minn. Stat. § 590.01 (2014)).  But, even if those exceptions apply to the statutory bar, we have carefully reviewed the record and our review convinces us that Carridine's claims do not meet the exceptions.  Accordingly, we hold that the postconviction court did not err in summarily denying relief to Carridine on his claims of

---

[3]  We did not specifically discuss the Hawkins testimony in *Carridine*, 812 N.W.2d 130, but Carridine did raise the claim based on this testimony in his pro se supplemental brief on direct appeal.

evidentiary error, prosecutorial misconduct, ineffective assistance of trial counsel, and newly discovered evidence based on Hawkins' affidavit.

## B.

We turn next to Carridine's claim that the postconviction court erred in summarily denying relief on his claim of ineffective assistance of appellate counsel. In order to be entitled to an evidentiary hearing on an ineffective-assistance-of-counsel claim, the petitioner "must allege facts that, if proven by a fair preponderance of the evidence, would satisfy the two-prong test" set forth in *Strickland v. Washington*, 466 U.S. 668, 687 (1984). *Nissalke*, 861 N.W.2d at 93 (citation omitted) (internal quotation marks omitted). Under the *Strickland* test, the petitioner must demonstrate that "(1) his counsel's performance fell below an objective standard of reasonableness, and (2) that a reasonable probability exists that the outcome would have been different but for counsel's errors." *Andersen v. State*, 830 N.W.2d 1, 10 (Minn. 2013). If a claim fails to satisfy one prong, we may dispose of the claim without considering the other prong. *Nissalke*, 861 N.W.2d at 94.

In his petition for postconviction relief, Carridine alleged that his appellate counsel was ineffective for failing to raise two broad categories of claims: (1) ineffective assistance of trial counsel, and (2) prosecutorial misconduct.[4] We will discuss each claim in turn.

---

[4] Carridine also claims in his brief that his appellate counsel was ineffective because counsel "failed to submit petitioners [sic] amended supplement[al] pro-se brief." Carridine did not raise this claim below, and therefore we need not consider it. *Robinson*

(Footnote continued on next page.)

*1. Ineffective assistance of trial counsel*

When a petitioner bases his ineffective-assistance-of-appellate-counsel claim on appellate counsel's failure to raise a claim of ineffective assistance of trial counsel, he must first show that trial counsel was ineffective. *Vance v. State*, 752 N.W.2d 509, 514 (Minn. 2008). We have held that "[w]hat evidence to present to the jury, what witnesses to call, and whether to object are part of an attorney's trial strategy which lie within the proper discretion of trial counsel and will generally not be reviewed later for competence." *State v. Bobo,* 770 N.W.2d 129, 138 (Minn. 2009); *see also Andersen*, 830 N.W.2d at 10 (noting that the extent of trial counsel's investigation is ordinarily considered trial strategy).

In his petition for postconviction relief, Carridine alleged that trial counsel's conduct fell below an objective standard of reasonableness when counsel failed to do the following: hire or consult with an independent forensic expert; request forensic reports prepared by the State's forensic expert in preparation for the trial; interview or subpoena two specific witnesses; hire a private investigator to track down additional witnesses; subpoena cellphone records of a key State witness, which Carridine believes would have impeached the witness's timeline of events; file motions to suppress evidence that was

(Footnote continued from previous page.)
*v. State*, 567 N.W.2d 491, 494 n.2 (Minn. 1997) ("It is well settled that a party may not raise issues for the first time on appeal.").

8

prejudicial to the defense; and review a surveillance tape prior to the pre-trial hearing and object when a witness identified Carridine in the tape.[5]

Having carefully considered trial counsel's alleged failures, we conclude that they all relate to trial strategy. We further conclude that the facts of this case do not provide a compelling reason to depart from the general rule that appellate courts do not review an attorney's trial strategy for competence. Accordingly, even if Carridine had proven the alleged failures of trial counsel by a preponderance of the evidence, the files and records of the proceeding conclusively show that he would be entitled to no relief under the first prong of the *Strickland* test.

As to the second prong, Carridine has not alleged any facts that, if proven by a preponderance of the evidence, would create a reasonable probability that the outcome of his trial would have been different had his trial counsel taken these additional actions. Even if his counsel successfully took all of the steps Carridine suggests, by conducting additional investigations, subpoenaing additional witnesses and phone records, and objecting to other evidence, Carridine has not shown that anything other than cumulative and non-material evidence would have been admitted. *See State v. Rhodes*, 657 N.W.2d 823, 842 (Minn. 2003) (noting that when considering the second prong of *Strickland*, the court considers the totality of the evidence before the jury).

---

[5] Carridine also claims in his brief that his trial counsel was ineffective for failing to challenge Carridine's grand jury indictment. Carridine did not raise this claim below, and therefore we need not consider it. *Robinson*, 567 N.W.2d at 494 n.2.

In sum, because Carridine's ineffective-assistance-of-appellate-counsel claim is based on appellate counsel's failure to raise a claim of ineffective assistance of trial counsel, Carridine must first show that his trial counsel was ineffective. Carridine's postconviction petition fails to allege facts that, if proven by a preponderance of the evidence, would establish a claim of ineffective assistance of trial counsel. Because the files and records of the proceeding conclusively show that Carridine is entitled to no relief on his claim that appellate counsel was ineffective for failing to assert an ineffective-assistance-of-trial-counsel claim on direct appeal, the postconviction court did not abuse its discretion when it summarily denied that claim. *See Wright v. State*, 765 N.W.2d 85, 92 (Minn. 2009).

## 2. *Prosecutorial misconduct*

We next consider whether the postconviction court abused its discretion when it summarily denied Carridine's claim that appellate counsel was ineffective for failing to assert additional claims of prosecutorial misconduct on direct appeal.[6] The additional claims of prosecutorial misconduct involve allegations that the prosecutor deliberately offered perjured testimony and violated the rules of discovery.

We have said that "[c]ounsel appealing a criminal conviction has no duty to raise all possible issues." *Dent v. State*, 441 N.W.2d 497, 500 (Minn. 1989). We have also

---

[6] On direct appeal, Carridine claimed that the State committed prosecutorial misconduct by "(1) improperly using jury selection to inject racial and socio-economic considerations into the trial; (2) shifting the burden of proof to the defendant in its closing argument; (3) denigrating his defense theory; (4) denigrating his character; and (5) continuing to ask questions that the district court ruled improper." *Carridine*, 812 N.W.2d at 145-46.

10

said that, "[l]awyers representing appellants should be encouraged to limit their contentions on appeal at least to those which may legitimately be regarded as debatable." *Dobbins v. State*, 788 N.W.2d 719, 729 (Minn. 2010) (alteration in original) (quoting *Case v. State*, 364 N.W.2d 797, 800 (Minn. 1985)). In reviewing an assertion of ineffective assistance of appellate counsel, the question is " 'whether the representation and the assistance were reasonable in the light of all the circumstances,' not whether counsel raised each claim the appellant wanted her to raise." *Dobbins*, 788 N.W.2d at 729 (quoting *Dent*, 441 N.W.2d at 500). We therefore must consider whether Carridine's petition alleged facts that, if proven by a preponderance of the evidence, would support a claim that appellate counsel's decision to advance some prosecutorial misconduct claims, but not others, fell below an objective standard of reasonableness.

Here, as in *Dobbins*, the additional prosecutorial misconduct claims identified by Carridine lack merit. 788 N.W.2d at 729. Even if proven by a preponderance of the evidence, the facts alleged by Carridine do not show that the State deliberately offered perjured testimony or violated the rules of discovery. Although the alleged facts arguably impeach some of the statements made by the State's witnesses, they do not demonstrate a deliberate offering of perjured testimony. As for the alleged discovery violations, Carridine concedes that he has the "complete forensic and ballistic files" and a "basic rap sheet" for the witnesses. Moreover, the postconviction petition fails to allege any facts to support Carridine's argumentative assertion that the State possesses undisclosed reports or witness cellphone records.

11

In sum, counsel appealing a criminal conviction has no duty to raise all possible issues. The facts alleged in Carridine's postconviction petition, even if proven by a preponderance of the evidence, would not support a claim that appellate counsel's decision to advance some prosecutorial misconduct claims, but not others, fell below an objective standard of reasonableness. This is especially true when the additional claims of prosecutorial misconduct lack merit and would not have affected the outcome of Carridine's appeal. Because the files and records of the proceeding conclusively show that Carridine was entitled to no relief on his claim that his appellate counsel was ineffective for failing to assert additional prosecutorial misconduct claims, we hold that the postconviction court did not abuse its discretion when it summarily denied that claim.

## II.

We next consider whether the postconviction court erred by not granting Carridine a new trial based on newly discovered evidence from Madison and Hill. To receive a new trial based on newly discovered evidence, a petitioner must prove, by a preponderance of the evidence: "(1) that the evidence was not known to the defendant or his/her counsel at the time of the trial; (2) that the evidence could not have been discovered through due diligence before trial; (3) that the evidence is not cumulative, impeaching, or doubtful; and (4) that the evidence would probably produce an acquittal or a more favorable result." *Rainer v. State*, 566 N.W.2d 692, 695 (Minn. 1997).

The postconviction court granted an evidentiary hearing on the basis of the Madison and Hill affidavits, but denied postconviction relief, determining that the third and fourth prongs of the *Rainer* test had not been met. In reviewing a postconviction

court's findings, we determine whether there is sufficient evidence to sustain the findings. *Schleicher v. State*, 718 N.W.2d 440, 444-45 (Minn. 2006). We do not reverse the postconviction court's findings unless they are clearly erroneous. *Dukes v. State*, 621 N.W.2d 246, 251 (Minn. 2001).

The postconviction court found that neither Madison nor Hill was credible. The court noted that it was difficult to believe they witnessed the incident, decided not to come forward, and then had a change of heart seven years later. The court found it particularly suspicious that they both came forward after being housed in the same correctional facility as Carridine. The court also concluded that Madison's testimony lacked detail, both as to his memory of the incident and as to how he heard about the incident in prison. Hill's testimony was doubtful, the court found, because of his relationship with Carridine. The court also found it unreasonable that Hill would not have recognized Carridine at the scene, given their past relationship. The court further thought it was suspicious that Hill's affidavit was made just over a week after the court initially denied Carridine's petition. Finally, the court noted that Hill's testimony about the speed of the car conflicted with Madison's testimony on this topic.

Because the testimony was doubtful, the postconviction court concluded that it did not meet the third and fourth prongs of the *Rainer* standard. We have carefully reviewed the record from the evidentiary hearing and there is sufficient evidence in the record to support the postconviction court's findings. The testimony of Madison and Hill is questionable at best, and the postconviction court's finding that the witnesses lacked

13

credibility was not clearly erroneous.[7]  *See Miles v. State*, 840 N.W.2d 195, 201 (Minn. 2013) ("The postconviction court is in the best position to evaluate witness credibility and so we defer to the court's credibility determinations.").  We therefore hold that the postconviction court did not abuse its discretion when it denied Carridine's newly discovered evidence claim.

Affirmed.

---

[7]     Carridine also claims in his reply brief that the postconviction court's denial of these claims represents "an inherent showing of judicial biasness [sic]."  Although Carridine describes the evidentiary hearing as "a mere formality" after the "judge had his mind made up," he offers no support for this claim, other than his disagreement with the conclusion that the witnesses lacked credibility.  We therefore decline to address this argument.  *See Hodgson v. State*, 540 N.W.2d 515, 517 (Minn. 1995) ("The petitioner's allegations must be more than argumentative assertions without factual support."(citation omitted)).

14