STATE OF MINNESOTA

IN SUPREME COURT

A15-1102

Clay County                                                          Hudson, J.
                                                           Took no part, Chutich, J.

Tracy Alan Zornes,

              Appellant,

vs.                                                          Filed: June 15, 2016
                                                           Office of Appellate Courts
State of Minnesota,

              Respondent.

_____

Tracy Alan Zornes, Stillwater, Minnesota, pro se.

Lori Swanson, Attorney General, Saint Paul, Minnesota; and

Brian Melton, Clay County Attorney, Moorhead, Minnesota, for respondent.

_____

S Y L L A B U S

    1.    With respect to the claims that are procedurally barred, the postconviction court did not abuse its discretion by denying appellant's petition without granting an evidentiary hearing.

    2.    Even assuming that one of appellant's claims for ineffective assistance of trial counsel is not *Knaffla*-barred, the files and records of the proceedings conclusively show that he is not entitled to relief.

1

3.	The files and records of the proceedings conclusively show that appellant did not receive ineffective assistance of appellate counsel and the postconviction court did not abuse its discretion in denying the petition without an evidentiary hearing.

Affirmed.

Considered and decided by the court without oral argument.

O P I N I O N

HUDSON, Justice.

In November 2011 appellant Tracy Alan Zornes was convicted in Clay County of two counts of first-degree premeditated murder for the killing of Megan Londo and John Cadotte. Zornes was also convicted of first-degree arson of a dwelling and theft of a motor vehicle. After we affirmed Zornes' convictions on direct appeal, he sought postconviction relief. His postconviction petition alleged numerous grounds for relief, including various claims of trial error, ineffective assistance of trial counsel, and ineffective assistance of appellate counsel. The postconviction court denied Zornes' petition without granting an evidentiary hearing, concluding that the claims of trial error and ineffective assistance of trial counsel were procedurally barred, and that the ineffective-appellate-counsel claims were meritless. Because we conclude that the postconviction court did not abuse its discretion in denying Zornes' petition without granting an evidentiary hearing, we affirm.

2

I.

Following an early-morning apartment fire in Moorhead in February 2010, the bodies of Megan Londo and John Cadotte were discovered by emergency personnel. Londo and Cadotte had both been beaten and stabbed, and had died before the apartment was set ablaze. An investigation led law enforcement to suspect that Tracy Zornes committed the murders, and roughly 2 weeks later police found Zornes hiding in a remote makeshift campsite in the woods. When Zornes was arrested, officers recovered a pocketknife from his person and several more of his possessions, including a hammer, box cutter, screwdriver, and scissors, from the campsite.

Zornes was indicted for two counts of first-degree premeditated murder, Minn. Stat. § 609.185, subd. (a)(1) (2014); two counts of second-degree intentional murder, Minn. Stat. § 609.19, subd. (1)(1) (2014); first-degree arson of a dwelling, Minn. Stat. § 609. 561, subd. 1 (2014); and theft of a motor vehicle, Minn. Stat. § 609.52, subd. 2(17) (2014).[1]

Zornes' counsel made several pre-trial motions in limine, including a motion to exclude the items seized from his person and his campsite on the grounds that the items were irrelevant and substantially more prejudicial than probative. *See* Minn. R. Evid. 401-03. In support of the motion to exclude, Zornes' counsel argued that the State had offered no evidence that the items were in fact linked to the crimes with which Zornes was charged. That motion was denied.

---

[1] The arson count was related to the fire set in the apartment on the morning of the murders, and the theft charge was related to the theft of Cadotte's car that same morning.

After trial, Zornes was found guilty on all counts except for the second-degree murder charges. The district court sentenced him to concurrent terms of life in prison without the possibility of release for the murders, a consecutive term of 45 months in prison for the arson, and a concurrent term of 30 months for the theft conviction. The court also ordered him to pay restitution.

On direct appeal, Zornes argued for reversal of his convictions on the grounds that (1) his right to a public trial was violated; (2) admission of a statement he made to police violated his Fourth Amendment rights; (3) the district court abused its discretion in admitting into evidence the items (including the pocketknife) found on his person and at his campsite when he was arrested; and (4) the district court abused its discretion when it ruled the state could impeach him with evidence of his prior felony convictions if he chose to testify. *State v. Zornes*, 831 N.W.2d 609, 617-18 (Minn. 2013). We rejected those arguments and affirmed his convictions. *Id.* at 612.

Zornes subsequently filed a petition for postconviction relief, arguing that numerous trial errors denied him a fair trial. Zornes also alleged that both his trial counsel and his appellate counsel provided ineffective assistance by failing to effectively argue or raise the issues identified in his petition. The postconviction court denied the petition without granting an evidentiary hearing, concluding that the trial issues and the ineffective-assistance-of-trial-counsel claims were procedurally barred, and that Zornes' ineffective-assistance-of-appellate-counsel claims constituted mere argumentative assertions without factual support.

On appeal, Zornes argues that the postconviction court erred and that his postconviction claims entitle him to either an evidentiary hearing to expand the record in support of his claims or a new trial.

We review the denial of a petition for postconviction relief, including the petitioner's request for an evidentiary hearing, for an abuse of discretion. *Colbert v. State*, 870 N.W.2d 616, 622 (Minn. 2015). In doing so, we review legal issues de novo and the postconviction court's factual findings for clear error. *Id.*

A postconviction court may only deny a petition without holding an evidentiary hearing if the petition, the files of the proceedings, and the trial court record conclusively show the petitioner is not entitled to relief. Minn. Stat. § 590.04, subd. 1 (2014); *Schleicher v. State*, 718 N.W.2d 440, 450 (Minn. 2006). In making this determination, the court must consider the facts alleged in the light most favorable to the petitioner. *Matakis v. State*, 862 N.W.2d 33, 37 (Minn. 2015). However, a petitioner's allegations must constitute more than argumentative assertions without factual support. *Id.*

III.

We turn first to Zornes' claims of trial error. Zornes argues that seven trial errors denied him a fair trial, and that his convictions must therefore be reversed. Specifically, Zornes argues that the prosecution: (1) improperly argued that he had the "means" to commit the murders although his pocketknife was incapable of inflicting some of the victims' wounds; (2) submitted a "false and misleading" witness list to the court; (3) entered photos and testimony into evidence without foundation; (4) committed

misconduct in its questioning of a witness. Zornes also argues that the prosecutor committed misconduct during closing argument by (5) improperly referring to his choice not to testify; (6) making other prejudicial statements; and (7) using an "inflammatory" computer-based slide presentation.

Under the *Knaffla* rule, when a postconviction petition follows a direct appeal, all claims raised in the direct appeal and all claims that were known or should have been known at the time of the direct appeal are procedurally barred. *Hooper v. State*, 838 N.W.2d 775, 787 (Minn. 2013); *see also State v. Knaffla*, 309 Minn. 246, 252, 243 N.W.2d 737, 741 (1976).[2]

Because Zornes' claims of trial error are all based on events that occurred during his trial, they were all known or should have been known at the time of the direct appeal. Zornes makes no specific argument that either of the two exceptions to the *Knaffla* rule applies.[3] Accordingly, the postconviction court did not abuse its discretion in

---

[2] In 2005, the postconviction statute was amended to include a procedural bar. The statute as amended states that "A petition for postconviction relief after a direct appeal has been completed may not be based on grounds that could have been raised on direct appeal of the conviction or sentence." Minn. Stat. § 590.01, subd. 1 (2014).

[3] We have previously recognized two exceptions to the *Knaffla* rule: "(1) an issue so novel that its legal basis was not reasonably available at the time of the direct appeal, or (2) in the interest of justice—when fairness so requires and the petitioner did not deliberately and inexcusably fail to raise the issue on direct appeal." *Quick v. State*, 757 N.W.2d 278, 280 (Minn. 2008). We have not resolved the question of whether these exceptions remain applicable to postconviction petitions following the 2005 legislative amendments to the postconviction statute, *see*, *e.g.*, *Colbert*, 870 N.W.2d at 626 n.9, and we need not do so in this case.

Zornes argues that his postconviction claims are different from those raised on direct appeal, and that we should therefore substantively review them. However, the

(Footnote continued on next page.)

determining that Zornes' claims of trial error are procedurally barred and denying them without granting a hearing on those issues.

IV.

Zornes also argues that the postconviction court erred in denying his petition with respect to eight claims of ineffective assistance of trial counsel. He contends that his counsel's performance with regard to the seven trial issues discussed in Part III, *supra*, was ineffective. He also argues that his counsel was ineffective in failing to obtain exclusion of the pocketknife entered into evidence at trial.

The *Knaffla* rule applies to claims of ineffective assistance of counsel, and thus Zornes' claims are barred if they are based on the trial record and were known or should have been known to him at the time of his direct appeal. *Reed v. State*, 793 N.W.2d 725, 732 (Minn. 2010). However, an ineffective-assistance-of-trial-counsel claim brought in a postconviction proceeding following direct appeal is not *Knaffla*-barred if review of the claim requires consideration of facts outside those in the trial court record. *Sanchez-Diaz v. State*, 758 N.W.2d 843, 847 (Minn. 2008).

A.

First, Zornes' claims that his trial counsel was ineffective with regard to the issues discussed in Part III, *supra*, are based on events that occurred on the record at his trial. Zornes identifies no particular reason why he could not have raised these claims on direct

_____

(Footnote continued from previous page.)
mere fact that a claim was not brought on direct appeal does not prevent operation of the *Knaffla* rule if that claim was known or should have been known at the time of direct appeal. *Quick v. State*, 692 N.W.2d 438, 439 (Minn. 2005).

7

appeal or why facts other than those contained in the records and files of the proceedings are needed to review his counsel's performance. These ineffective-assistance issues can be reviewed on the basis of the trial court record alone, and are therefore *Knaffla*-barred. *See Schleicher*, 718 N.W.2d at 450.

## B.

Zornes also argues that his trial counsel was ineffective in failing to prevent the pocketknife, recovered from Zornes' person at the time of his arrest, from being entered into evidence at trial. He contends that this issue is not *Knaffla*-barred because facts outside the trial court record are necessary to review it. In support of this contention, he submitted as an exhibit to his postconviction petition the victims' autopsy reports, which were disclosed to the defense but not entered into evidence and are thus not part of the trial court record. Zornes contends that the reports show that the blade of his pocketknife was incapable of inflicting several of the victims' wounds. He asserts that, though his attorney moved to exclude the knife, the attorney failed to recognize and make the wound-incompatibility argument, which Zornes characterizes as the most compelling argument for the pocketknife's exclusion. He argues that an evidentiary hearing is needed to determine whether his counsel adequately reviewed the autopsy reports and to examine counsel's reasons for choosing not to present expert testimony regarding the knife's incompatibility with those wounds.

We conclude that, even if this issue is not *Knaffla*-barred, the postconviction court did not abuse its discretion in denying the claim without a hearing, because the

8

postconviction files and the trial court record conclusively show that Zornes is not entitled to relief on this basis.

To receive an evidentiary hearing on an ineffective-assistance-of-counsel claim, a petitioner must allege facts that would, if proven, entitle him to relief under the two-pronged *Strickland* test. *Leake v. State*, 737 N.W.2d 531, 536 (Minn. 2007) (citing *Strickland v. Washington*, 466 U.S. 668, 690-94 (1984)). Thus, the facts alleged must show, if proven, that counsel's representation (1) fell below an objective standard of reasonableness and (2) that but for counsel's errors, there was a reasonable probability the result would have been different. *Andersen v. State*, 830 N.W.2d 1, 10 (Minn. 2013). We review such claims with a strong presumption that counsel's performance was reasonable. *Id.*

Zornes cannot overcome the "strong presumption" that his trial counsel provided reasonable assistance. *Id*. Counsel filed a motion to exclude the pocketknife and other tools recovered from Zornes' campsite, arguing specifically that "[t]he State has failed to provide any witnesses or scientific testing which provide a connection between the items" and the crimes. Zornes' attorney argued that, because the State could prove no such connection, the items should have been excluded as irrelevant or, in the alternative, as substantially more prejudicial than probative.

It is true that counsel did not make the argument that the knife was incapable of inflicting the specific wounds Zornes points to in the autopsy reports. However, counsel could reasonably have concluded that this argument should not be pursued because, according to the same autopsy reports, the victims *did* have wounds (such as those on

9

their ears) that could have been produced by the knife in question.[4]  Moreover, Zornes'

attorney did not stop at seeking exclusion of the evidence.  On cross-examination of the

medical examiner, the attorney established that the examiner could not say that the

victims' wounds were caused by the specific tools found at the campsite.  Zornes'

attorney also emphasized in closing argument that none of the items found at the

campsite, including the pocketknife, "yielded anything that would connect those items to

the crimes."  On these facts, Zornes cannot overcome the strong presumption that his trial

counsel's performance was reasonable.  As this determination is conclusive, there is no

reason to address the second prong of the ineffective-assistance claim.  *Andersen*, 830

N.W.2d at 10.

V.

Finally, Zornes contends that the postconviction court erred in denying his claims

of ineffective assistance of appellate counsel.  Ineffective assistance of appellate counsel

is properly raised in a first postconviction petition, because the petitioner could not have

known of such a claim at the time of direct appeal.  *See Wright v. State*, 765 N.W.2d 85,

90-91 (Minn. 2009).  Like a claim for ineffective assistance of trial counsel, to prove

ineffective assistance of appellate counsel a petitioner must prove both prongs of the

*Strickland* test.  *Sessions v. State*, 666 N.W.2d 718, 722 (Minn. 2003).

---

[4]    *See State v. Daniels*, 361 N.W.2d 819, 827 (Minn. 1985) (affirming the admission of a gun in a murder case despite the fact it could not have fired the fatal shots because it was sufficiently connected to the defendant and "could well have been" the other gun used in the crime).

An attorney's representation meets the objective standard of reasonableness if the attorney exercises the skills and diligence that a reasonably competent lawyer would exercise under the circumstances. *Leake*, 737 N.W.2d at 536. Appellate counsel has no duty to raise all possible issues, and may choose to present only the most meritorious claims to the court. *Bobo v. State*, 820 N.W.2d 511, 516 (Minn. 2012). Appellate counsel does not act unreasonably by not raising issues that he or she could have legitimately concluded would not prevail. *Wright*, 765 N.W.2d at 91. We employ a strong presumption that appellate counsel's judgment about which issues to raise falls within the wide range of reasonable professional performance. *Bobo*, 820 N.W.2d at 516. "[W]hen an ineffective assistance of appellate counsel claim is based on appellate counsel's failure to raise an ineffective assistance of trial counsel claim, the [petitioner] must first show that trial counsel was ineffective" to prevail on the appellate counsel claim. *Wright*, 765 N.W.2d at 91 (quoting *Fields v. State*, 733 N.W.2d 465, 468 (Minn. 2007)).

A.

Zornes first argues that his appellate attorney was ineffective by failing to raise the ineffective-assistance-of-trial-counsel claim premised on exclusion of the pocketknife, which we discussed and deemed meritless in Part IV(B), *supra*. Zornes' appellate attorney was not ineffective by declining to raise a meritless issue. *See Wright*, 765 N.W.2d at 91. Therefore, the postconviction court did not abuse its discretion by denying his petition without granting a hearing on that claim.

11

B.

Zornes next argues that his appellate attorney was ineffective by failing to challenge the prosecution's use of an allegedly inflammatory computer-based slide presentation during closing argument.

It is well-established that parties may use visual aids in closing arguments. *See Brabeck v. Chicago & N.W. Ry. Co.*, 264 Minn. 160, 167-68, 117 N.W.2d 921, 926-27 (1962). However, Zornes makes allegations that, if factually supported, would potentially require an evidentiary hearing to be held: that the presentation "contain[ed] information not admitted into evidence" and that neither defense counsel nor the court was provided a copy of the presentation prior to its use. *See id.* at 168, 117 N.W.2d at 926-27 (holding that the use of visual aids in closing argument is proper so long as they contain only facts supported by the evidence and they are submitted to the court and opposing counsel in chambers beforehand). However, Zornes does not explain further which facts were included that allegedly lacked evidentiary support. Accordingly, he has not alleged facts that, if proven, would entitle him to relief. *Matakis*, 862 N.W.2d at 37. Zornes' argument that his attorney was ineffective by failing to raise this issue constitutes an argumentative assertion without factual support, and he is not entitled to an evidentiary hearing on the issue.

C.

Finally, Zornes argues that his appellate counsel was ineffective by failing to raise the issue of prosecutorial misconduct based on the prosecutor's purported references to

Zornes' choice not to testify.[5]  Zornes characterizes this as an "arguably stronger" argument than the issues his attorney raised on appeal.  As Zornes makes no specific argument that an evidentiary hearing is necessary to review this claim, we will review the claim only to determine whether Zornes is entitled to relief on the basis of the trial court record.

Zornes' argument on this issue fails because he cannot establish either prong of *Strickland*, though we need only discuss the first prong, as that prong is determinative. *See State v. Rhodes*, 657 N.W.2d 823, 842 (Minn. 2003).

Though Zornes cites many instances in the closing argument transcript in which the prosecutor refers to Zornes' "words" or "explanations," the large majority of these references are not to Zornes' decision not to testify, but rather to statements made by Zornes following the crime, which were entered into evidence through witness testimony. Only two of the comments that Zornes alleges constituted misconduct do not refer explicitly to witness testimony: (1) "it would be nice to know a motive for these brutal

---

[5]    Zornes also contends that this misconduct was compounded by the district court's no-adverse-inference instruction, and that he was not informed of his right to reject that instruction.  However, that claim is clearly contradicted by the record.  Zornes stated on the record that he had "discussed the issue of whether or not [he] wish[ed] to testify or not testify with [his] attorneys."  Further, in Zornes' presence, his attorney stated to the court that Zornes "will be making a specific request for use of" the no-adverse-inference instruction.  Finally, when the court asked Zornes directly if he wanted the no-adverse-inference instruction given, Zornes consented, and specifically told the court to read that instruction only once, along with the rest of the instructions, prior to the jury's deliberations.

13

homicides," and (2) "[b]ut some things can't be explained. He can't explain that smoke detector."[6]

Indirect references to a defendant's choice not to testify constitute misconduct if they "(1) manifest the prosecutor's intention to call attention to the defendant's failure to testify, or (2) are such that the jury would naturally have understood them as a comment on the defendant's failure to testify." *State v. Vue*, 797 N.W.2d 5, 16 (Minn. 2011) (quoting *State v. DeRosier*, 695 N.W.2d 97, 107 (Minn. 2005)). Such misconduct constitutes per se reversible error if the comments are extensive, the comments stress to the jury that an inference of guilt from silence is a basis for conviction, and evidence exists that could have supported acquittal. *State v. DeRosier*, 695 N.W.2d 97, 107 (Minn. 2005). If the misconduct does not constitute per se reversible error, it is reviewed for harmless error, which requires us to determine whether it is clear beyond a reasonable doubt that the verdict was "surely unattributable to" the misconduct. *State v. Juarez*, 572 N.W.2d 286, 292 (Minn. 1997).

First, the prosecutor's comment that "it would be nice to know a motive" was not an indirect reference to Zornes' choice not to testify. Unlike *DeRosier*, in which the prosecutor's comment that "it would be nice to know what happened" constituted such a reference, the comment here was not coupled with another statement by the prosecutor that the defendant did know, and was withholding, the very information that would be

---

[6]     The State established at trial that at least one smoke detector was missing from the apartment where the murders occurred and a fire was set. The remains of a smoke detector were found by police in Cadotte's car, which had been stolen and burned by Zornes following the murders. Those remains were entered into evidence at trial.

14

"nice to know." *See DeRosier*, 695 N.W.2d at 107. Rather, the comment in this case was delivered solely as part of the prosecutor's argument to the jury emphasizing that motive is not an element of the crimes with which Zornes was charged.

Second, even assuming that the prosecutor's brief comments that "some things can't be explained" and that Zornes "can't explain" the presence of the smoke detector in the car constituted misconduct, they were at most harmless error, and thus his appellate attorney was not ineffective by failing to raise the issue on appeal.[7] Zornes' attorney objected to the comments and specifically responded to them in his own closing argument, emphasizing that Zornes was presumed innocent and had no duty to explain anything to prove his innocence. Also, as Zornes requested, the court instructed the jury that it could not draw an adverse inference from Zornes' choice not to testify, and we presume that jurors follow the court's instructions. *State v. Gatson*, 801 N.W.2d 134, 151 (Minn. 2011). In *DeRosier*, we concluded that even more direct and sustained comments on the defendant's choice not to testify than those arguably present here constituted harmless error due to, among other factors, the minimal cumulative effect of the comments, the court's jury instructions, and the substantial evidence of guilt. 695 N.W.2d at 107-08. All of those factors are present in this case as well. Because Zornes' appellate attorney could have reasonably concluded that this claim would not succeed, Zornes has not shown that his attorney's performance was ineffective. Accordingly, the

---

[7] The comments were not per se reversible error as they were not extensive, consisting of only two sentences in a trial spanning over 1400 pages of transcript and a closing argument that spans 26 pages. *See DeRosier*, 695 N.W.2d at 107.

15

postconviction court did not abuse its discretion by denying his claim on this issue without granting an evidentiary hearing.

## VI.

In sum, we conclude that the postconviction court did not abuse its discretion in determining that Zornes' claims of trial error are procedurally barred.  We also conclude that Zornes' claims of ineffective assistance of trial counsel are either procedurally barred or do not otherwise entitle him to an evidentiary hearing.  Finally, the files and records of the proceedings conclusively show that Zornes did not receive ineffective assistance of appellate counsel.  Accordingly, the postconviction court did not abuse its discretion in denying Zornes' petition without granting an evidentiary hearing.

Affirmed.

CHUTICH, J., not having been a member of this court at the time of submission, took no part in the consideration or decision of this case.

16