**Tracy Alan ZORNES, Appellant,**

v.

**STATE of Minnesota, Respondent.**

A17-0404

Supreme Court of Minnesota.

Filed: November 8, 2017

412

Tracy Alan Zornes, pro se.

Lori Swanson, Attorney General, Saint Paul, Minnesota, and; Brian J. Melton, Clay County Attorney, Moorhead, Minnesota, for respondent.

## OPINION

CHUTICH, Justice.

In this case involving first-degree murder, appellant Tracy Alan Zornes appeals from the denial of his second petition for postconviction relief. At issue is whether the postconviction court abused its discretion when it denied the petition without holding an evidentiary hearing. Because the court properly exercised its discretion, we affirm.

## FACTS

In February 2010, Megan Londo and John Cadotte died after being beaten, stabbed, and left in a burning apartment. The police investigation focused on Zornes, whom officers found hiding in a remote makeshift campsite in the woods about two weeks after the murders.[1] When he was arrested and searched, officers found a folding knife in Zornes's pocket. At Zornes's campsite, police also found a hammer, a box cutter,[2] a screwdriver, and a pair of scissors.

A grand jury indicted Zornes on two counts of first-degree premeditated murder, Minn. Stat. § 609.185, subd. (a)(1) (2016).[3] Zornes pleaded not guilty and demanded a jury trial. The jury found Zornes guilty of both counts of first-degree murder, and the court sentenced Zornes to consecutive terms of life in prison without the possibility of release.

On direct appeal, Zornes argued that the probative value of the pocketknife, box cutter, scissors, screwdriver, and hammer was outweighed by the risk of unfair prejudice because the items were not directly tied to the crime scene or murders. *State v. Zornes* (*Zornes I*), 831 N.W.2d 609, 624-26 (Minn. 2013). He contended that the district court committed reversible error by admitting these items into evidence. *Id.* at 624. In affirming the convictions, we concluded that the probative value of the items in question was not outweighed by the risk of unfair prejudice because the items "were directly tied to Zornes and were the same type of weapon use[d] in the crime." *Id.* at 626. We also observed that the State did not mention the box cutter, scissors, and screwdriver during the case. *Id.*

In his first petition for postconviction relief, Zornes raised claims of ineffective assistance of trial and appellate counsel.

1. *State v. Zornes* (*Zornes I*), 831 N.W.2d 609 (Minn. 2013), contains a more complete description of the circumstances surrounding the deaths of Londo and Cadotte.

2. The item that we describe as a "box cutter" has also been described as a "utility knife." Both terms refer to the same item.

3. The indictment also alleged two counts of second-degree intentional murder, Minn. Stat. § 609.19, subd. (1)(1) (2016); first-degree arson of a dwelling, Minn. Stat. § 609.561, subd. 1 (2016); and theft of a motor vehicle, Minn. Stat. § 609.52, subd. 2(17) (2016).

These claims were based on trial counsel's failure to argue, during Zornes's pretrial motion to suppress the pocketknife, that the pocketknife could not have inflicted the victims' wounds.[4] *Zornes v. State* (*Zornes II*), 880 N.W.2d 363, 369-71 (Minn. 2016). We affirmed the postconviction court's summary denial of the first petition. *Id.* at 373. We concluded that even if the claims were not barred by *State v. Knaffla*, 309 Minn. 246, 243 N.W.2d 737 (1976), the record conclusively showed that Zornes was not entitled to relief. *Zornes II*, 880 N.W.2d at 370.

In January 2016, Zornes hired a private investigator to look into his case. Zornes also retained a forensic pathologist to review the crime scene information and offer her opinion on whether the tools found at the campsite could have caused the victims' wounds. In her report, the forensic pathologist opined that the victims' wounds did "not fit well to the proffered knife and hammer," suggesting that the tools from the campsite were not the murder weapons.

Zornes subsequently filed a second postconviction petition, asserting the following claims:

1. The prosecution failed to provide him with a number of documents that he only recently has discovered, which he believes is a *Brady* violation;

2. The forensic pathologist's report provided newly discovered evidence of actual innocence;

3. His investigator discovered new evidence of recantations of trial witnesses;

4. Trial counsel provided ineffective assistance by failing to strike jurors who were biased;

5. Trial counsel provided ineffective assistance by failing to conduct an investigation; and

6. Law enforcement officials did not sufficiently investigate his case.

The postconviction court denied Zornes's second petition for postconviction relief without holding an evidentiary hearing. This appeal followed.

## ANALYSIS

Zornes argues that the postconviction court abused its discretion when it summarily denied his second postconviction petition. "We review the summary denial of a petition for postconviction relief for an abuse of discretion." *Carridine v. State*, 867 N.W.2d 488, 492 (Minn. 2015). "When applying this standard, 'a matter will not be reversed unless the postconviction court exercised its discretion in an arbitrary or capricious manner, based its ruling on an erroneous view of the law, or made clearly erroneous factual findings.'" *Id.* (citing *Reed v. State*, 793 N.W.2d 725, 729 (Minn. 2010)).

"An evidentiary hearing is not required unless 'the petitioner alleges such facts which, if proved by a fair preponderance of the evidence, would entitle him or her to the requested relief.'" *Sutherlin v. State*, 574 N.W.2d 428, 436 (Minn. 1998) (quoting *Rainer v. State*, 566 N.W.2d 692, 695 (Minn. 1997)). In determining whether an evidentiary hearing is required, a postconviction court must consider the facts alleged in the petition in the light most

---

4. Zornes raised other claims, including a claim that the prosecution improperly argued that he had the means to commit the murders even though his pocketknife was incapable of inflicting some of the victims' wounds. *Zornes v. State* (*Zornes II*), 880 N.W.2d 363, 368 (Minn. 2016). We concluded that these claims were barred by *State v. Knaffla*, 309 Minn. 246, 243 N.W.2d 737 (1976), because Zornes failed to explain why he could not have raised them on direct appeal. *Zornes II*, 880 N.W.2d at 369.

favorable to the petitioner. *Bobo v. State*, 820 N.W.2d 511, 516 (Minn. 2012). If the facts alleged in the petition conclusively establish that the petition is untimely filed under the postconviction statute of limitations, Minn. Stat. § 590.01, subd. 4(a)-(c) (2016),[5] or procedurally barred under *Knaffla*, 243 N.W.2d at 741, an evidentiary hearing is not necessary, *Taylor v. State*, 874 N.W.2d 429, 431 (Minn. 2016). A court also need not hold a hearing when the petition is based on "argumentative assertions without factual support." *Lynch v. State*, 749 N.W.2d 318, 320 (Minn. 2008) (citations omitted) (internal quotation marks omitted).

## I.

■ Zornes asserts that the prosecutor intentionally suppressed favorable evidence in violation of *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963). According to his private investigator, the State failed to disclose three documents, each connected to a different trial witness.[6] The first document is the transcript of a police interview with M.K.M., a friend of Zornes. The transcript shows that she informed the police that, after the murder, Zornes told her that "[the female victim's] boyfriend, Mexican boyfriend had started their house on fire." The second document is a transcript of a police interview with Zornes's sister. The third is a narrative of a police interview with Zornes's friend M.P.[7] According to M.P., Zornes told her that he fell asleep in his

car on the night of the murders and awoke to discover that the building was on fire.

■ "[T]he suppression by the State, whether intentional or not, of material evidence favorable to the defendant violates the constitutional guarantee of due process." *Walen v. State*, 777 N.W.2d 213, 216 (Minn. 2010) (citing *Brady*, 373 U.S. at 87, 83 S.Ct. 1194). The test for determining whether a *Brady* violation exists includes three elements:

(1) the evidence must be favorable to the defendant because it would have been either exculpatory or impeaching;

(2) the evidence must have been suppressed by the prosecution, intentionally or otherwise; and

(3) the evidence must be material—in other words, the absence of the evidence must have caused prejudice to the defendant.

*Id.* (citation omitted). The facts alleged in Zornes's second petition, if proven at an evidentiary hearing, must meet all three requirements to establish a *Brady* violation. *Pederson v. State*, 692 N.W.2d 452, 459 (Minn. 2005) (citing *Strickler v. Greene*, 527 U.S. 263, 282, 119 S.Ct. 1936, 144 L.Ed.2d 286 (1999)).

■ "Because a *Brady* materiality analysis involves a mixed question of law and fact, we review a district court's materiality determination de novo." *Walen*, 777 N.W.2d at 216 (citation omitted). The materiality of undisclosed evidence is evaluated in light of the whole trial record. *Id.*

---

In this case, the State forfeited the statute-of-limitations defense, Minn. Stat. § 590.01, subd. 4(a), by not raising it below. *Hooper v. State*, 838 N.W.2d 775, 782 (Minn. 2013).

**6.** It is unclear from the record whether any other documents were not disclosed.

**7.** Zornes makes a number of other argumentative assertions without factual support, in-

cluding listing various items that he alleges he never received from the State. We limit our analysis to the claims for which there is adequate factual support. *Lynch v. State*, 749 N.W.2d 318, 320 (Minn. 2008) ("[A]n evidentiary hearing is unnecessary if the petitioner fails to allege facts that are sufficient to entitle him or her to the relief requested") (quoting *Leake v. State*, 737 N.W.2d 531, 535 (Minn. 2007)).

"Evidence is material under *Brady* 'if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different.'" *Id.* (quoting *State v. Hunt*, 615 N.W.2d 294, 299 (Minn. 2000)). "A 'reasonable probability' is one that is 'sufficient to undermine confidence in the outcome.'" *Id.* (quoting *Pederson*, 692 N.W.2d at 460). "[A] new trial is not required simply because a defendant uncovers previously undisclosed evidence that would have been possibly useful to the defendant but is unlikely to have changed the verdict." *Id.* (citation omitted).

The postconviction court concluded that even if Zornes had proven by a preponderance of the evidence at an evidentiary hearing that he did not receive these documents, he was still conclusively entitled to no relief. The court reached this conclusion because Zornes made "absolutely no showing of any important evidence that was either hidden or suppressed from the Petitioner or his attorney by the State in this case." According to the postconviction court, Zornes was "made well aware of what all the witnesses' testimony would likely be prior to the time of trial." In particular, the court explained that all the key information contained in the admittedly undisclosed transcript of the police interview with M.K.M. had been independently disclosed in other transcripts and police reports. Moreover, the undisclosed transcript was consistent with M.K.M.'s trial testimony. Regarding the missing transcript of the police interview of Zornes's sister, the court determined that Zornes's claim failed as a matter of law because his sister did not testify at trial.

Finally, the court determined that the narrative of the interview of M.P. had been turned over to Zornes's counsel before trial.

■ Zornes argues on appeal that the postconviction court abused its discretion in denying his *Brady* claim. Specifically, Zornes challenges the court's findings that his lawyer received the M.P. narrative and that Zornes's sister did not testify at trial. Although the record supports the court's finding that Zornes's lawyer received the narrative of the interview with M.P., it does not support the court's finding that Zornes's sister did not testify at trial. Because the trial transcript clearly shows that Zornes's sister *did* testify at trial, the postconviction court's finding is clearly erroneous.[8] Nevertheless, the court's conclusion that, as a matter of law, Zornes's *Brady* claim failed on its merits was well reasoned.

■ Even if the postconviction court clearly erred in its conclusion that Zornes's sister did not testify at trial, the allegedly suppressed evidence was not material because it was readily available in other documents; accordingly, no reasonable probability exists that, had the evidence been disclosed to the defense, the result of the trial would have been different. Although the State concedes that the recording of M.K.M.'s interview was not given to Zornes's lawyer, a report and a recording of another interview with M.K.M. *were* given to the defense. The undisclosed transcript contains slightly more detail than the other materials—specifically, the ethnicity of the boyfriend that

---

**8.** The postconviction court also concluded that the prosecutorial misconduct claims were *Knaffla*-barred because Zornes "was well aware of this information at the time of his first appeal" to this court. This analysis is incorrect. Zornes may have known about the key statements in the transcripts and narrative, but he did not know about the nondisclosure of the transcripts or narrative until the private investigator reviewed the records in November 2016, years after his direct appeal.

Zornes claimed had started the fire. But this additional detail was tangential and does not undermine our confidence in the outcome of the trial.

 The information in the documents concerning M.P. was also not material. The narrative of the police interview with M.P. that Zornes claims was undisclosed is identical in content to a report of the same interview, which the State submitted as an exhibit and Zornes does not contest having received.

In sum, even if the facts alleged in Zornes's petition regarding the witness statements were proven by a preponderance of the evidence at a postconviction evidentiary hearing, no reasonable probability exists that this information would have resulted in a different outcome at trial had Zornes received the documents.

## II.

 Zornes next argues that the expert report from the forensic pathologist is newly discovered evidence. His second postconviction petition alleged that the forensic pathologist he retained in February 2016 "reviewed the crime scene photos, lab reports, autopsy reports and autopsy photos, and definitively EXCLUDED as NOT being the weapons of causation of all injuries on Londo and Cadotte the items seized from Zornes at his campsite and proffered as the likely weapons by the State." To support his argument, Zornes cites to the forensic pathologist's report, in which she states that she reviewed all the evidence and concluded that the victims' wounds "do not fit well to the proffered knife and hammer."

 To evaluate whether Zornes is entitled to a new trial based on the forensic pathologist's report, we apply the *Rainer* new-evidence test:

"[T]o [obtain] a new trial based upon newly discovered evidence, a defendant must prove the following:
(1) that the evidence was not known to the defendant or his/her counsel at the time of the trial;
(2) that the evidence could not have been discovered through due diligence before trial;
(3) that the evidence is not cumulative, impeaching, or doubtful; *and*
(4) that the evidence would probably produce an acquittal or a more favorable result."

*Pearson v. State*, 891 N.W.2d 590, 596 (Minn. 2017) (alterations in original) (quoting *Rainer*, 566 N.W.2d at 695). "Because the requirements of the *Rainer* test are stated in the conjunctive," Zornes must satisfy all four elements. *Id.* In other words, if Zornes cannot satisfy even one element, his claim fails.

The postconviction court concluded that even assuming that Zornes proved the facts in his petition at an evidentiary hearing, he was conclusively entitled to no relief because he "ha[d] clearly not met the legal threshold requirements under the four prong test set forth in *Rainer*." According to the court, the expert opinion is not new evidence because "[the forensic pathologist] has only applied her expert opinion to the same evidence that has been a part of this case since the beginning." The court also emphasized that this court had already decided "that wound-incompatibility arguments not raised by Petitioner's counsel during the trial did not meet a legal threshold of ineffective assistance of counsel" and that Zornes's newly discovered evidence argument is essentially the same argument he raised on direct appeal.

The facts alleged in Zornes's petition fail, as a matter of law, to establish the fourth requirement of the *Rainer* test.

Zornes simply cannot show that the forensic pathologist's report or testimony would produce an acquittal because it was already established at trial that it was not possible to conclusively prove "that the victims' wounds were caused by the specific tools found at the campsite." *Zornes II*, 880 N.W.2d at 370. Given this record, the expert evidence would not present any new theory.

Because the facts alleged in Zornes's second postconviction petition fail, as a matter of law, to satisfy the fourth element of the *Rainer* new-evidence test, the postconviction court properly exercised its discretion in summarily denying Zornes's claim of newly discovered expert evidence.

### III.

■ Zornes further alleges facts to support a witness-recantation claim. He claims that his private investigator interviewed two eyewitnesses who testified at trial: J.M. and C.C. According to Zornes, J.M. and C.C. made statements to Zornes's private investigator that were inconsistent with their prior statements. The private investigator's affidavit, however, does not mention J.M., C.C., or any witness recantations. The postconviction court rejected Zornes's witness recantation claim, concluding that it was "argumentative in nature and not newly discovered evidence."

■ A petition for postconviction relief may not be based on an "argumentative assertion without factual support." *Lynch*, 749 N.W.2d at 320 (citations omitted) (internal quotation marks omitted). Here, the witnesses have not provided affidavits outlining their allegedly changed stories and the private investigator does not say that she interviewed these witnesses. Zornes's witness-recantation claim therefore fails, as a matter of law, because Zornes has not alleged anything beyond argumentative assertions that he has discovered trial witnesses who have changed their accounts. Consequently, the postconviction court did not abuse its discretion in summarily denying this claim without holding an evidentiary hearing.

### IV.

■ Finally, Zornes asserts three claims that depend on information he knew or should have known at the time of trial. First, he argues that his lawyer was ineffective for failing to dismiss jurors that Zornes believes were biased. Second, he contends that his lawyer's investigation was unreasonable because it failed to uncover the evidence underlying his claims of newly discovered evidence. Third, he alleges facts to support a claim of prosecutorial misconduct. He labels some assertions "spoliation," but they are actually additional arguments that law enforcement officials did not sufficiently investigate the case.

The postconviction court determined that Zornes was conclusively entitled to no relief because the *Knaffla* rule bars all of these claims. According to the court, Zornes failed to raise these trial issues in his direct appeal and "failed to demonstrate the existence of an exception to the general rule barring re-consideration of issues previously known but not raised on direct appeal." The court also discussed the merits of the juror-bias claim at length.[9] Although the court never expressly decided the claim of ineffective assis-

---

9. In the merits discussion, the postconviction court determined that the allegation that the trial judge was involved as a deacon or worked closely with one of the jurors in a church setting was "simply not true." This analysis was erroneous because at this stage the postconviction court was required to treat all of Zornes's allegations as true and then determine whether they succeed as a matter of law.

tance based on counsel's alleged failure to investigate, it concluded that Zornes's claims were all *Knaffla*-barred because Zornes "was well aware of the investigation that was going on at the time of trial" and could have further investigated the ineffective-assistance claim on direct appeal.

 "[A] postconviction court may summarily deny a claim that is procedurally barred by the *Knaffla* rule." *Pearson*, 891 N.W.2d at 597 (citation omitted). Under *Knaffla*, "once a direct appeal has been taken, all claims raised in the direct appeal and all claims that were known or should have been known but were not raised in the direct appeal are procedurally barred." *Id.* (citation omitted). "If a claim of ineffective assistance of trial counsel can be determined on the basis of the trial record, the claim must be brought on direct appeal or it is *Knaffla*-barred." *Nissalke v. State*, 861 N.W.2d 88, 93 (Minn. 2015).

The *Knaffla* rule bars Zornes's ineffective-assistance claims and his claim that law enforcement officials failed to investigate his case. Zornes's claims of ineffective assistance of counsel for failure to strike biased jurors can be determined on the basis of the trial record. Similarly, Zornes's claims that his lawyer and law enforcement officials failed to sufficiently investigate his case should have been known at trial, and Zornes failed to raise them during his direct appeal. Because these claims were known at the time of trial and were not raised during the direct appeal, the *Knaffla* rule bars the claims, unless the facts alleged in the petition establish one of the exceptions to the *Knaffla* rule.

 When a claim was not raised in an earlier proceeding, there are two exceptions to the *Knaffla* bar. First, "a defendant's failure to raise a claim may be excused when the claim is 'so novel that the legal basis was not available' in the earlier proceeding." *Pearson*, 891 N.W.2d at 597-98 (quoting *Buggs v. State*, 734 N.W.2d 272, 274 (Minn. 2007)). Second, "a defendant's failure to raise a claim may be excused when the claim has substantive merit and the petitioner did not deliberately and inexcusably fail to raise the claim in a prior proceeding."[10] *Id.* at 598.

Without providing any factual support, Zornes asserts that his claims "meet[ ] the two *Knaffla* exceptions." Because Zornes's attempt to invoke the *Knaffla* exceptions is merely an argumentative assertion without factual support, it fails as a matter of law. *Lynch*, 749 N.W.2d at 320 (citations omitted) (internal quotation marks omitted). The *Knaffla* rule thus bars Zornes's claims of ineffective assistance of trial counsel and prosecutorial misconduct.

## CONCLUSION

For the foregoing reasons, we affirm the decision of the postconviction court.

Affirmed.

---

**10.** We have not yet decided "whether the *Knaffla* exceptions survived the passage of the 2005 amendments to the postconviction statute." *Pearson*, 891 N.W.2d at 599 n.9. Because Zornes has not demonstrated that either exception is met, we need not reach the issue of the continued viability of the exceptions here.