STATE OF MINNESOTA

IN SUPREME COURT

A24-0259

Blue Earth County                                                                          Thissen, J.

Joel Marvin Munt,

                              Appellant,

vs.                                                                                        Filed: July 16, 2025
                                                                                           Office of Appellate Courts
State of Minnesota,

                              Respondent.

_____

Joel Munt, Rush City, Minnesota, pro se.

Keith Ellison, Attorney General, Saint Paul, Minnesota; and

Patrick R. McDermott, Blue Earth County Attorney, Susan B. DeVos, Assistant County Attorney, Mankato, Minnesota, for respondent.

_____

## S Y L L A B U S

1.      The district court did not abuse its discretion by denying appellant's petition for postconviction relief as to his equal protection claim.

2.      The district court did not abuse its discretion by denying appellant's petition for postconviction relief as to his claims of entrapment, trial counsel's disregard of his "defense objective of choice," and witness tampering.

1

Affirmed.

Considered and decided by the court without oral argument.

O P I N I O N

THISSEN, Justice.

This case concerns appellant Joel Marvin Munt's third petition for postconviction relief. Munt was convicted of first-degree premeditated murder and several other offenses related to the murder of his ex-wife in 2011. He was sentenced to life in prison without the possibility of release. Munt's petition for postconviction relief contains several claims that Munt asserts entitle him to reversal of his convictions. First, Munt argues that the United States Supreme Court's decision in *Dobbs v. Jackson Women's Health Organization*, 597 U.S. 215 (2022), reversing its recognition of a federal constitutional right to abortion, rendered his conviction for first-degree premeditated murder invalid on equal protection grounds. Munt makes other arguments concerning entrapment, his "defense objective of choice" during his original trial, and witness tampering. Because the district court did not abuse its discretion by denying Munt's petition as to any of his claims, we affirm.

**FACTS**

This court has recounted the central facts of this case on several previous occasions.[1] We briefly summarize them here.

---

[1] *See State v. Munt* (*Munt I*), 831 N.W.2d 569 (Minn. 2013); *Munt v. State* (*Munt II*), 880 N.W.2d 379 (Minn. 2016); *Munt v. State* (*Munt III*), 920 N.W.2d 410 (Minn. 2018); *Munt v. State* (*Munt IV*), 984 N.W.2d 242 (Minn. 2023).

2

Munt was married to Svetlana Munt,[2] with whom he had three children. In 2006, Svetlana reported that Munt was abusing her; she moved out of the family home and into a domestic-abuse shelter in Mankato. Munt began divorce proceedings and alleged that Svetlana was abusing their children. The district court granted Munt sole legal and sole physical custody of the children, subject to Svetlana having parenting time, but this was later changed to joint custody. In 2008, Munt refused to return their children to Svetlana after a scheduled visit, again claiming that she was abusing them. The district court held Munt in contempt and suspended his parenting time, limiting future contact with the children to supervised visits at the domestic-abuse shelter.

On March 28, 2010, Munt had a visit scheduled with the children. Munt intercepted Svetlana prior to the visit and intentionally rammed his vehicle into hers, pinning it to a tree with her and the children still inside. He then exited the car and shot Svetlana four times, killing her. Several witnesses approached the scene. Munt threatened to kill the first witness to approach; the witness fled and called 911. Two other witnesses, who were with their own children, approached Svetlana's vehicle and tried to help the children inside. Munt also threatened to kill these witnesses, then stole their vehicle, loaded his three children inside, and drove away. Blue Earth County police officers stopped Munt in the stolen vehicle and arrested him. Among other items, law enforcement recovered a pistol, which was later determined to have been used to kill Svetlana.

---

[2] Because appellant and Svetlana shared a last name, we refer to Svetlana by her first name for clarity.

Munt was indicted on 17 counts, to which he pled not guilty and not guilty by reason of mental illness. A jury found Munt guilty on all counts in the indictment and rejected the mental illness defense. The district court convicted Munt of first-degree premeditated murder for Svetlana's death and imposed a life sentence without the possibility of release. The district court also convicted and sentenced him for first-degree aggravated robbery, second-degree assault, kidnapping, and criminal vehicular operation causing injury.

On direct appeal to this court, Munt raised five issues through his attorney and additional claims in a pro se supplemental brief. *State v. Munt* (*Munt I*), 831 N.W.2d 569, 576, 587 (Minn. 2013). Among these claims, Munt alleged witness tampering by the State, a claim he raises again in his present petition. *See id.* at 588. Munt also raised an ineffective assistance of trial counsel claim on direct appeal. *Id.* We affirmed Munt's convictions in an opinion issued May 31, 2013. *Id.*

This is Munt's third petition for postconviction relief filed in state court.[3] He filed this petition on October 2, 2023. Munt argues that the United States Supreme Court's decision in *Dobbs* renders Minnesota's first-degree murder statute, under which he was convicted, as well as other murder statutes, unconstitutional. Munt also makes three additional claims: (1) entrapment, (2) trial counsel's disregard of his "defense objective of

---

[3]    *See Munt II*, 880 N.W.2d at 380; *Munt IV*, 984 N.W.2d at 246.

4

choice," and (3) witness tampering. The district court summarily denied the petition without a hearing.[4] Munt appealed to this court.[5]

## ANALYSIS

We address Munt's arguments as follows: First, we consider Munt's equal protection claim predicated on *Dobbs*. Next, we consider Munt's arguments regarding entrapment, his "defense objective of choice," and witness tampering. We conclude that all of Munt's claims are time barred under the postconviction statute, Minn. Stat. § 590.01, subd. 4 (2024).

### I.

We first address whether Munt is entitled to relief on his equal protection claim.[6] Munt's convictions became final in 2013 after we affirmed them on direct appeal. If a

---

[4]     The district court rendered its decision in this case without the benefit of our decision in *Waiters v. State*, 14 N.W.3d 279 (Minn. 2024). In *Waiters*, we reiterated our rule announced in *Scruggs v. State*, 484 N.W.2d 21 (Minn. 1992), that where the record does not disclose the reasons for the district court's summary denial of postconviction relief, and the appellate courts cannot otherwise ascertain whether the district court actually considered the relevant claims, reversal and remand may be appropriate. 14 N.W.3d at 282–83. That relief is not appropriate here.

[5]     Munt served the State with his initial brief on March 12, 2024. Accordingly, the State was required to serve Munt with its brief by April 26, 2024. *See* Minn. R. Crim. P. 28.02, subd. 10. The State attempted to serve Munt by mail on April 26, 2024. The Department of Corrections (DOC) rejected the mail because the State placed packing tape on the outermost envelope containing its brief. The State again attempted to serve its brief on Munt by mail on May 21, 2024, and the DOC rejected it for the same reason. Finally, on June 4, 2024, the State effectively served Munt. We delayed our consideration of Munt's appeal to provide him with sufficient time to file a reply brief.

[6]     Munt asserts that we cannot properly consider parts of the State's arguments that he claims were not raised prior to appeal. The State raised most of the arguments it makes to

5

petitioner files a direct appeal, they may not file a petition for postconviction relief more than two years after the appellate court's disposition of that direct appeal. Minn. Stat. § 590.01, subd. 4(a)(2). Munt filed his current petition for postconviction review in October 2023. The petition is therefore untimely under section 590.01, subdivision 4(a)(2).

Munt argues that we may consider his postconviction claim asserting an equal protection violation under section 590.01, subdivision 4(b)(3), an exception to the two-year limitations period. To satisfy the exception, Munt must assert "a new interpretation of federal or state constitutional or statutory law by either the United States Supreme Court or a Minnesota appellate court and . . . establish[] that this interpretation is retroactively applicable to [his] case." Minn. Stat. § 590.01, subd. 4(b)(3). If Munt asserts a valid claim under subdivision 4(b)(3), then he has two years from the date the claim arose to file his petition, rather than two years from the date of disposition of his direct appeal. Minn. Stat. § 590.01, subd. 4(c). As Munt argues, that would be two years from June 24, 2022, the

_____

us in the district court. Even if some arguments were forfeited, we resolve this case on the ground that the claim is untimely—a ground that is not one of the arguments that may be forfeited. And we have discretion to reach otherwise-forfeited issues when the interests of justice so require and such consideration would not unfairly surprise a party on appeal. *State v. Loveless*, 987 N.W.2d 224, 237 (Minn. 2023). Consideration does not unfairly surprise Munt because he has the burden to show that his claim is timely.

Munt also believes we should not consider the State's response because it was not timely served. We have suggested that we may strike a brief that is not timely served. *See City of Waconia v. Dock*, 961 N.W.2d 220, 226 n.3 (Minn. 2021); *Townsend v. State*, 867 N.W.2d 497, 501 n.3 (Minn. 2015). *But see Carradine v. State*, 867 N.W.2d 488, 492 n.2 (Minn. 2015) (refusing to strike a pro se appellant's amended brief because, among other reasons, the respondent filed a response to the amended brief). Munt, however, did not serve a motion to strike. Moreover, the State's failure to timely serve its brief on Munt does not prevent us from deciding the case on its merits, as we do here. *See State v. Noggle*, 881 N.W.2d 545, 547 n.3 (Minn. 2016); Minn. R. Civ. App. P. 142.03 (directing that when a respondent fails to file a brief the matter is to be decided on the merits).

date the Supreme Court released its decision in *Dobbs*. *See Aili v. State*, 963 N.W.2d 442, 444 (Minn. 2021) (concluding that the two-year time limit in subdivision 4(c) runs from the date the Supreme Court of the United States announces an interpretation of law that applies retroactively). Because Munt filed his petition on October 2, 2023, his claim would be timely if the subdivision 4(b)(3) exception applies.

Munt asserts that the United States Supreme Court's decision in *Dobbs*—which overruled *Roe v. Wade*, 410 U.S. 113 (1973), and *Planned Parenthood of Southeastern Pennsylvania v. Casey*, 505 U.S. 833 (1992)—is a new interpretation of federal constitutional law that changes the law as it applies to him. To be clear, Munt's conviction and sentence have nothing to do with abortion or an unborn child. Munt was convicted and sentenced for murdering his ex-wife; there was no allegation she was pregnant at the time of her death. Munt nonetheless argues that *Dobbs* gives rise to an equal protection claim as between Minnesota's first-degree murder statute and Minnesota's abortion laws because criminalizing first-degree murder and not abortion is discriminatory. Munt's argument is that *Roe* prevented Munt from making his claim in 2011 because of *Roe*'s federal constitutional protection for a pregnant person's decision whether or not to terminate a pregnancy. He further argues that he could not have known about or raised his claim before the *Dobbs* decision was issued in June 2024 because, before that date, *Roe* was the law.

We disagree that *Dobbs* changed the law as applied to Munt. Munt was prosecuted for first-degree murder, an issue unaddressed in *Dobbs* and which the State has clear authority to criminalize. *See United States v. Morrison*, 529 U.S. 598, 618 (2000) ("[W]e

7

can think of no better example of the police power, which the Founders denied the National Government and reposed in the States, than the suppression of violent crime and vindication of its victims."). Although it is true that *Dobbs* changed federal constitutional law, it did so only as to abortion, holding that both "[t]he permissibility of abortion, and the limitations, upon it" belong to the people and their elected representatives in each state. 597 U.S. at 232 (citation omitted) (internal quotation marks omitted). The State of Minnesota has acted directly on these issues by enacting statutes addressing the permissibility of abortion before and after *Dobbs*.[7] Munt's argument stretches *Dobbs* too far. Munt cannot invoke *Dobbs* as retroactively giving rise to an equal protection claim as to his conviction for first-degree murder, predicated on the permissibility of abortion under Minnesota statutes, when *Dobbs* itself said "[i]t is time to heed the Constitution and return the issue of abortion to the people's elected representatives." *Id.*

For these reasons, because Munt did not establish a new interpretation of law that is retroactively applicable to his case, the exception in section 590.01, subdivision 4(b)(3), does not apply.

## II.

We next turn to Munt's other claims that he argues entitle him to postconviction relief: (1) witness tampering; (2) trial counsel's disregard of his "defense objective of choice"; and (3) trial counsel's failure to assert an entrapment defense. Munt does not

---

[7] When Munt was convicted in 2011, abortion in Minnesota was governed by Minn. Stat. § 145.412 (2010). Section 145.412 has since been repealed and replaced with section 145.409, the Protect Reproductive Options Act. Act of Jan. 31, 2023, ch. 4, § 1, 2023 Minn. Laws 23, 23–24 (codified at Minn. Stat. § 145.409 (2024)).

elaborate much on the basis for these claims.[8]  We conclude that the district court did not abuse its discretion when it summarily denied the claims as untimely because Munt did not raise them within two years of our 2013 disposition of his direct appeal.  Minn. Stat. § 590.01, subd. 4(a)(2).

Munt also claims that his appellate counsel on direct appeal was ineffective because he failed to raise the latter two issues in the ineffective assistance of trial counsel claim on direct appeal.  But like the claims discussed above, Munt was required to seek postconviction relief for the claim of ineffective assistance of appellate counsel within two years after our decision on his direct appeal became final.  Minn. Stat. § 590.01, subd. 4(a)(2); *Griffin v. State*, 941 N.W.2d 404, 410 (Minn. 2020).  He did not.

Section 590.01, subdivision 4(b), provides exceptions to the two-year time limitation set forth in section 590.01, subdivision 4(a).  Munt asserts that we may consider his remaining claims under the interests-of-justice exception.  Minn. Stat. § 590.01, subd. 4(b)(5).  To satisfy the interests-of-justice exception, Munt must "allege an injustice that prevented him from meeting the statutory time limit." *Blanche v. State*, 988 N.W.2d 486, 492 (Minn. 2023).  "The interests-of-justice exception is intended for injustices related to a delay in filing a petition, not an injustice related to the substance of a petition." *Id.*

Munt alleges that he could not assert these claims within two years of his convictions because the State stole legal documents from him while he was in Blue Earth County Jail

---

[8]    Munt raised witness tampering on direct appeal through his pro se supplemental brief. *Munt I*, 831 N.W.2d at 588.  We rejected the claim because of Munt's failure to cite any evidence in the record or legal authority that would support his claim. *Id.*  He offers nothing more here.

awaiting trial and later while he was in prison. The last of these alleged incidents took place in 2019—more than three years before he filed the current postconviction petition. Munt makes other allegations of interference from prison officials, claiming most recently that in February 2021, prison staff shuffled and deleted some of his written legal work.

We conclude that even if Munt proved these allegations by a preponderance of the evidence at an evidentiary hearing, they fail, as a matter of law, to satisfy his burden to demonstrate that the interests-of-justice exception applies to his otherwise untimely claims. Munt provides no explanation for why he could not have raised these claims earlier despite the alleged interference. Indeed, we considered and rejected a similar claim Munt raised in his last petition, noting that Munt "offer[ed] no compelling reason why the circumstances prevented the *timely* filing of his petition." *Munt v. State* (*Munt IV*), 984 N.W.2d 242, 248 (Minn. 2023). During the time that Munt claims prison officials prevented him from raising these claims, he successfully filed several other postconviction appeals in federal and state courts. The alleged claims of document loss and other interference fail to justifiably explain why he could not have raised these issues—denial of "defense objective of choice," entrapment, and witness tampering—over a decade ago. We therefore hold the district court did not abuse its discretion when it summarily denied Munt's claims as untimely.

## CONCLUSION

For the foregoing reasons, we affirm the decision of the district court.

Affirmed.